95 N.J. Super. 142 (1967)
230 A.2d 179
ALLSTATE INSURANCE COMPANY, A BODY CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PATRICK CAMPBELL, AN INFANT, BY HIS GUARDIAN AD LITEM, AUGUST CAMPBELL, AUGUST CAMPBELL, INDIVIDUALLY, MARGARET CAMPBELL, STEPHEN McGUIRE, AN INFANT, BY HIS GUARDIAN AD LITEM, RICHARD McGUIRE, RICHARD McGUIRE, INDIVIDUALLY, AND MARY K. McGUIRE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 12, 1967.
*144 Mr. Ralph W. Campbell for plaintiff (Messrs. Campbell, Mangini, Foley & Lee, attorneys).
Mr. Harry R. Burton for defendants Patrick Campbell, an infant, by his guardian ad litem August Campbell, August Campbell individually, and Margaret Campbell (Messrs. Burton, Quackenboss, Axelrod & Rubenson, attorneys).
Mr. Gordon Berkow for defendants Stephen McGuire, an infant, by his guardian ad litem Richard McGuire, Richard McGuire individually, and Mary K. McGuire (Messrs. Hutt & Berkow, attorneys).
LANE, J.S.C.
This action was instituted for a declaratory judgment that plaintiff is not obligated under its homeowners' policy issued to defendants August and Margaret Campbell to defend them and their son Patrick Campbell in connection with a suit brought against them by Stephen *145 McGuire and his parents to recover damages as the result of an accident that occurred to Stephen on July 4, 1965.
The Campbells and the McGuires had been friends for a number of years before the date of the accident. Up to that date they visited with each other frequently. On July 4, 1965 the McGuires and their children joined the Campbells at a picnic being given by Mr. Campbell's employer. After the picnic they went to the Campbell home. The two McGuire boys and Patrick Campbell left the house to watch a parade. They came back and obtained something from upstairs and then left again. When they returned shortly thereafter it was obvious that Stephen had received an injury to his eye. He was immediately taken to the hospital where he stayed for about two weeks. As a result of the injury he lost one of his eyes.
On the night of the accident the boys had told their parents a story as to how the accident happened which was not true. The following day, however, Patrick Campbell, who was then 12 or 13 years old, told his father the truth. The three boys had taken a cherry bomb that had been obtained by Patrick Campbell to a brook. There Patrick held the cherry bomb while Stephen's brother lit it. After it was lit Patrick threw the bomb into the brook. They waited for the explosion. When the bomb exploded it forced a foreign object into Stephen's eye.
After this incident the McGuires stayed at the Campbell house for approximately two weeks while their son was in a local hospital, and then returned to their home in Hoboken. Since that time the two families have not visited, and there has been very little communication between them.
On the date of the accident there was in force a homeowners' policy of Allstate Insurance Company insuring August and Margaret Campbell. It provided that the company would pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, and that the company would defend any suit against the insured alleging bodily injury. Condition 3, applicable to *146 the comprehensive personal liability and medical payments coverages, provided:
"When an occurrence takes place, written notice shall be given by or on behalf of the insured to this Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses."
It was stipulated that no notice of the accident was given to plaintiff until January 22, 1966. Immediately upon receiving notice of the accident the company proceeded to investigate the accident. On January 25 it took a statement from August Campbell and obtained a nonwaiver agreement from August and Margaret Campbell, specifically referring to the late notice received. It also took a statement from Patrick Campbell and ascertained that Stephen McGuire had in fact lost one of his eyes.
At no time did Mr. or Mrs. McGuire say that they were not going to sue for the injuries received by their son. Mr. Campbell had offered to help pay the medical expenses. There was a definite damper on the relationship between the McGuires and the Campbells after the accident.
To justify not giving notice Mr. Campbell said he did not understand the policy pertained to anything occurring off the property. Although he had glanced at the policy prior to the date of the accident, he had not thoroughly read it. He and his wife had submitted four claims to plaintiff under the provisions of this or prior policies for property damage loss. In 1960 they submitted a claim for wind storm loss. In 1963 they submitted a claim for fire loss to a washing machine. In 1964 they submitted a claim for loss of a jacket that was stolen from their son at school. It is significant that this loss occurred off the property of the Campbells. It is also significant that in connection with this loss they had telephoned plaintiff's Asbury Park office to find out if there was coverage under the policy. They knew that plaintiff maintained an *147 office in Asbury Park from which questions as to coverage would be answered. This office was open from 9 A.M. to 9 P.M., six days a week. Again in 1965, a claim was made to recover for a loss arising out of a fire in the kitchen.
Plaintiff disclaimed coverage on February 17, 1966 on the sole ground of late notice.
Mr. Campbell is 40 years of age and has been employed as a routeman for Wonder Bread for 14 years. He had taken a real estate course for a short time and had also studied law for a short time. In his employment he had been given instructions that whenever an accident occurred an accident report should be made out as soon as possible.
Mrs. Campbell is 41 years old and for a short period of time had worked as a secretary. She had also worked for a period of one year as a file clerk for a life insurance company. She is a high school graduate.
The requirement for notice in accordance with the terms of the policy is regarded in this State as a condition precedent to coverage. Ebert v. Balter, 74 N.J. Super. 466 (App. Div. 1962). The term "as soon as practicable" means "within a reasonable time." Miller v. Zurich General Accident and Liability Ins. Co., 36 N.J. Super. 288 (App. Div. 1955). The insurer does not have to show that it has actually suffered any prejudice. Bass v. Allstate Ins. Co., 77 N.J. Super. 491 (App. Div. 1962). Lack of prejudice, however, may be considered in determining the reasonableness of the time within which notice was given. Figueroa v. Puter, 84 N.J. Super. 349 (App. Div. 1964). Although ignorance of coverage may under certain circumstances be a factor in determining whether notice was given within a reasonable time, it cannot be an excuse unless such ignorance was without negligence on the part of the person seeking to be excused. Velkers v. Glen Falls Ins. Co., 93 N.J. Super. 501 (Ch. Div. 1967).
Considering the experience of Mr. and Mrs. Campbell, the claims that they had made with the company, the change in the relationship between themselves and the McGuires *148 following the accident, the seriousness of the injury and the general knowledge that in these days more and more people are making claims for damages as a result of personal injuries, one would have expected Mr. and Mrs. Campbell to have ascertained the fact of coverage and to have given notice to their insurance company promptly upon the happening of the accident. There was no reason for them to expect that the McGuires would not make a claim. The notice given by Mr. and Mrs. Campbell did not comply with the policy provision as to time, and therefore no coverage need be afforded to them in connection with the accident.
The policy provided that the word "insured" meant not only the named insured but also "any other person under the age of 21 in the care of the insured." Therefore, young Patrick Campbell, who was the actor in connection with the incident leading to the injury sustained by the McGuire boy, was an insured under the policy. The condition of the policy as to notice would, of course, apply to him and must be interpreted as to him in accordance with general principles of law relating to the giving of notice.
The question to be answered is whether Patrick acted as a reasonable person would taking into account, among other factors, his age.
In Figueroa v. Puter, 84 N.J. Super. 349 (App. Div. 1964), the court said:
"In deciding whether the insured has acted as a reasonable person would in relation to the time when notice was given, the court should take into consideration the `particular background, intelligence and experience' of this particular insured. Cf. Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 211 (App. Div. 1958), certification denied 27 N.J. 398 (1958). This is because the standard of conduct to be applied involves some knowledge of or assumptions as to the law of liability by the insured and some judgment on her part respecting application of the law to the known facts. `This is not an area for application of standards applicable to the ordinary "reasonable man," within the general tort viewpoint.' Ibid." (at p. 355).
It cannot be expected that Patrick would give notice unless he had knowledge that he was afforded coverage under the *149 policy. Mariani v. Bender, 85 N.J. Super. 490 (App. Div. 1964), certification denied 44 N.J. 409 (1965).
A default in giving notice is excused by the physical incapacity of the insured, Revell v. Columbian Protective Assn., 9 N.J. Misc. 1311 (Sup. Ct. 1931), and so also should be excused in the case of an infant who would be unable to read the insurance policy and to understand its provisions.
In National Surety Corporation v. Wells, 287 F.2d 102 (5 Cir. 1961), the insurance company attempted to disclaim because an additional insured, 16 years old, had not turned over suit papers to the company in accordance with the terms of the policy. In holding that there was coverage, the Court stated:
"We think this case should be disposed of on the basic proposition that considering Wells, Jr. was a minor and an omnibus assured, not a formal party to the insurance contract, he made timely transmission of the process as soon as, with reasonable diligence for one of his maturity, he became aware of coverage in his favor. The facts on this are not in dispute and to the extent that variable inferences were open, they were drawn by the trial judge whose business it is to do just that. F.R. Civ. P. 52(a), 28 U.S.C.A. Wells, Jr. knew in a general way that his father had insurance on the car. But he did not know that it protected him or anyone other than his father. He did not know that he was regarded as an `additional assured.' It was not until all of the agitation by the Insurer over the failure of Wells, Sr. to have forwarded the process in the first suit that he learned of this legal fact for the first time. By that time he had (about January 3, 1958) personally delivered to the Insurer the citation in the first suit. And within a few days after the second suit, he forwarded that process as well.
We regard these circumstances as decisively significant in determining whether, as Texas defines `immediate,' the forwarding of process by this young lad was within a reasonable time. Few boys have heard of omnibus, and if they have it undoubtedly means something other than insurance. Rare will be the high school boy who will have read, or reading will have understood, the sometimes weird language of an insurance policy. The law as an unavoidable necessity for effectual enforcement of contracts, may have to attribute knowledge of contents (and the duties spelled out thereby) to the parties to a contract. But it is carrying fiction to outer space to charge one who merely knows that another has a contract with constructive knowledge that such contract was made for his benefit as well if  and the if is a big one  a certain occurrence takes place under certain conditions. It becomes only more unrealistic when in this process, upon that constructive *150 knowledge, the sometime-maybe-third-party-beneficiary is thereby subjected to the unknown duties and obligations to make some sort of report or forward some sort or some kinds of papers to some company whose name and address is unknown.
While perhaps not previously delineated in quite this way, the law preserves its noble claim to reason by rejecting such artificiality. In this specific area the text writers and the cases are against the Insurer's contentions here as Appleman makes so clear:
`An additional insured, operating an automobile with the permission of the owner, has been held to be a proper person to give notice to the insurer. Such additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby.

* * * * * * * *
`An insured's lack of knowledge of the existence of insurance excused a delay in giving notice, as a matter of law, where he was not guilty of a lack of due diligence. And an additional insured was under no duty to give notice, until he had knowledge that he was covered by the policy'
By adhering to this standard of `reasonableness' the law avoids the erection of automatic immunities, whether it be for minors as a class or omnibus assureds as a class. Whether process is forwarded quickly enough depends on the reasonableness of the action of any such person considering his knowledge and understanding of the probable existence of coverage and some duty to act flowing therefrom. The law does not, as the Insurer fears, therefore let down the bars. The law takes the contract as insurers have drawn it  a coverage extended to times, places and persons unknown or yet unborn  and applies to it a rule of reason that when persons not parties reasonably learn that they are benefited subject to certain conditions, they must then, but not before, perform them." (at pp. 107-108)
The court issued a caveat as to its holding by saying in a footnote:
"We sound a special caveat. We are dealing here with a case in which the minor within what we conclude was a `reasonable' time forwarded the process to the Insurer who suffered no prejudice whatsoever. We do not undertake to decide or intimate, one way or the other, what will or should be the result in a case in which discovery of coverage and report or transmission of process by the omnibus assured comes at such a late time that the Insurer has been, or will likely be, prejudiced or injured." (at p. 108)
The same caveat should be applied here. However, there was no attempt on the part of the insurance company to show any prejudice. In fact, it rejected the court's invitation to do so. The three actors and their parents are still available. The *151 police investigated the accident and presumably there is a police report.
See Nationwide Mutual Ins. Co. v. State Farm Mutual Ins. Co., 209 F. Supp. 83 (N.D.W. Va. 1962); Allstate Insurance Co. v. Alford, 25 Misc.2d 707, 206 N.Y.S.2d 388 (Sup. Ct. 1960), affirmed 14 A.D.2d 650, 218 N.Y.S.2d 313 (App. Div. 1961).
In Miller v. Zurich General Accident and Liability Ins. Co., 36 N.J. Super. 288 (App. Div. 1955), the facts disclose that there was an infant involved. However, the opinion does not discuss in any way the obligation on the part of an infant, as opposed to an adult, to give notice. There the infant was at least 17 years old. That case does not stand as authority that an infant is to be considered as though he were an adult in determining whether notice has been given in accordance with the terms of the policy.
The policy was written by plaintiff. Broad coverage was afforded. Such coverage could have been limited, but was not, probably because a limitation might have made the policy less desirable to the public. Provisions for this type of situation could have been inserted in the policy. Plaintiff must expect that its policy will be construed in accordance with the law as it exists at the time its terms are before a court.
Plaintiff is under an obligation to afford coverage for the accident to Patrick Campbell and must assume his defense in the action pending in the Law Division and pay any judgment that may be rendered against him within the policy limits.
In the Law Division action Patrick Campbell is being represented by the same attorney who is representing his parents, to whom the plaintiff owes no obligation in connection with that suit. If the parties are unable to agree as to a counsel fee for the representation of the infant to date, the matter may be brought on by motion.
Judgment will be presented within ten days, consented to as to form, in accordance with R.R. 4:55-1, embodying the views set forth herein.