DAVID COOPER AND DOLORES COOPER, HIS WIFE, PLAINTIFFS-APPELLANTS, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued October 24, 1967—Decided January 22, 1968.

*Mr. Michael P. King* for appellants (*Mr. Carl Kisselman,* of counsel; *Mr. F. Herbert Owens, III,* on the brief; *Messrs. Kisselman, Devine, Deighan and Montano,* attorneys).

*Mr. Michael A. Orlando* for respondent (*Messrs. Orlando and Cummins,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiffs Cooper obtained a judgment holding that the defendant carrier is obligated to provide coverage under an automobile liability policy. The Appellate Division reversed, and we granted certification. 48 *N. J.* 441 (1967).

The issue is whether plaintiffs gave the carrier notice of the accident "as soon as practicable" as the policy requires.[1]

---

[1] *N. J. S. A.* 17:28–2 requires the policy to read, or be deemed to read, "that failure to give any notice required to be given by the policy within the time specified therein shall not invalidate any claim made by the insured if it is shown not to have been reasonably possible to give the notice within the prescribed time and that notice was given as soon as was reasonably possible."

The accident occurred on August 11, 1962. Neither the named insured nor his wife who was driving the car notified the carrier until served with the summons and complaint almost two years later. The insureds say they did not notify the carrier because they had no idea a claim would emerge. The trial court found they held that view reasonably and in good faith, and therefore did not breach the notice provision of the policy, whereas the Appellate Division held that persons of the insureds' education and experience should have understood that notice was required under the circumstances.

The facts are these: The claimant, Mrs. Fleischer, was a passenger in the Cooper car. The accident occurred when, according to Mrs. Cooper, another car, driven by one Soper, which was weaving in and out, tried to cut across the path of the Cooper car, resulting in contact between the left rear of the Soper vehicle and the right front of the Cooper car. Neither car was damaged. Mrs. Cooper called the police, not because the collision itself was of any moment, but because she was incensed by the way Soper operated his automobile. Mrs. Cooper was not then aware of any injury to Mrs. Fleischer, who was in the back seat, but when the police arrived and inquired about injuries, Mrs. Cooper heard Mrs. Fleischer say she was nauseous, her head hurt, and her ankle hurt. On the way home, according to Mrs. Fleischer, she threw up, whereas Mrs. Cooper said she saw her spit. In any event, Mrs. Cooper knew that Mrs. Fleischer was at least upset, and Dr. Cooper, a dentist, offered to help her locate a medical doctor if she wanted to see one. Thereafter Mrs. Cooper and Mrs. Fleischer, who were friends although not intimate, saw each other intermittently. Their relations were not affected in the least. Mrs. Fleischer made no further reference to an injury, and at no time did she indicate that a claim would be made. In fact she testified that Mrs. Cooper was not at fault, and that she, Mrs. Fleischer, was surprised to learn that her attorney had joined the Coopers as defendants.

■ Although the policy requires notice "[i]n the event of an accident, occurrence or loss," and so provides without

any exception, the cases hold a trivial or inconsequential event is beyond the intent of the provision. *Bass v. Allstate Ins. Co., 77 N. J. Super.* 491 (*App. Div.* 1962); *Figueroa v. Puter,* 84 *N. J. Super.* 349, 354 (*App. Div.* 1964); 8 *Appleman, Insurance Law and Practice* § 4743, *p.* 78; § 4744, *p.* 83 (1962); 13 *Couch, Insurance 2d,* § 49:138, *p.* 723 (1965). This does not mean that an insured, conscious of a possibility of a claim, may omit to report the accident upon the ground that in his opinion the claim is without merit either because the fault was not his or because the claimed injuries are unreal. Obviously an insured may not assume the role of judge and jury. But the insured does not lose the agreed policy protection if he omits to give notice because he reasonably and in good faith believes no claim against him is contemplated either because the damage is trivial or because there is no suggestion in the circumstances that he is causally involved. This accords with the reasonable expectation of the parties to the insurance arrangement.

 Upon this view of the insured's obligation, the trial court found the policy was not breached. Mrs. Cooper did not understand that anyone harbored the thought of suing her. The impact between the cars was slight. There was no damage to either car. She summoned an officer only because she felt outraged by the manner in which Soper had maneuvered his vehicle. Although her passenger revealed some distress, it seemed to be only a passing thing. It did not occur to her that anyone thought her to be culpable. No one advanced such a claim, and since she heard no more of the matter from Mrs. Fleischer, she understandably thought there was no significant hurt. At least the trial court was well warranted in taking this view of the testimony and in concluding therefrom that the Coopers should not forfeit their insurance for failure to give notice.

If Mrs. Fleischer had later asserted a claim for the minor hurt of which the Coopers were aware, the trial court's conclusion would hardly be questioned. The doubts arise only

because Mrs. Fleischer later asserted substantial losses and did so with respect to the Coopers almost two years after the event. Yet if the Coopers behaved reasonably upon the basis of what they knew immediately after the occurrence, the quality of their behavior could not be affected by developments of which they were unaware. If the additional circumstances seem to pull against them, it is because the circumstances suggest the carrier may have been hurt by late notice. In fact, in its argument before us, the carrier dwelt at length upon the subject of prejudice. Thus there is projected the question as to what role prejudice may play in this area.

Upon that topic, the carrier offered testimony consisting of a narration of what investigations might have been made and a speculation that the claim might have been settled cheaply at an earlier date. It appears that Soper's carrier was on the case prior to suit, but the record does not reveal what that company had gathered which might serve the common defense.

The trial court said it had no doubt the defendant carrier was "in a difficult position so far as getting all the information that would be required to properly investigate" but held that the subject of prejudice was not material because the insured acted reasonably in not giving notice before suit. The Appellate Division referred to the trial court's observation, and then added that "Although the insurer is not required to show that it was prejudiced by the delay in giving notice, the absence of prejudice may be considered in determining the reasonableness of the delay," after which it concluded the insureds had not acted reasonably. It is not clear whether prejudice played an affirmative part in the Appellate Division's decision and, as we have said, the carrier's brief before us abounds in its assertions of prejudice.

The policy provides that no action shall lie against the company unless "as a condition precedent" the insured shall have fully complied with all the terms of the policy, of which the notice provision is one. In *Whittle v. Associated Indem-*

*nity Corp.,* 130 *N. J. L.* 576 (*E. & A.* 1943), such a provision was enforced literally. Speaking in conventional terms of freedom of contract, the court charged the insured with the policy stipulations, and concluded that the absence of prejudice need not be shown since it did not matter whether the carrier was prejudiced by a failure to give timely notice. Cases elsewhere divide upon that issue. 8 *Appleman, Insurance Law and Practice* § 4732, *pp.* 15–19 (1962); 13 *Couch, Insurance 2d,* § 49 :127, *p.* 715 (1965); annotation, 18 *A. L. R. 2d* 443, 479 (1951).

It is far from clear that a carrier should be able to disclaim if the failure to give timely notice did not in fact prejudice the defense of the claim. It therefore is not surprising that decisions since *Whittle* have undercut it by saying that although the carrier need not show prejudice in addition to the breach, nonetheless prejudice is relevant in determining whether the notice given satisfied the policy provision. *Miller v. Zurich General Accident & Liability Ins. Co.,* 36 *N. J. Super.* 288, 296 (*App. Div.* 1955); *Mahon v. American Cas. Co. of Reading,* 65 *N. J. Super.* 148, 183 (*App. Div.* 1961), certification denied, 34 *N. J.* 472 (1961); *Bass v. Allstate Ins. Co., supra,* 77 *N. J. Super.,* at *p.* 495; *Velkers v. Glens Falls Ins. Co.,* 93 *N. J. Super.* 501, 513 (*Ch. Div.* 1967); *Allstate Ins. Co. v. Campbell,* 95 *N. J. Super.* 142, 147 (*Ch. Div.* 1967); *cf. Mariani v. Bender,* 85 *N. J. Super.* 490 (*App. Div.* 1964), certification denied, 44 *N. J.* 409 (1965). The difficulty with this approach is that the prejudice factor could unwittingly be turned against the insured if prejudice were permitted to lead to a loss of coverage notwithstanding that notice was in fact given as soon as practicable. Indeed, the question whether notice which is otherwise reasonable would not satisfy the policy if the carrier was prejudiced, was expressly left open in *Allstate Ins. Co. v. Campbell, supra,* 95 *N. J. Super.,* at 150. In the case at hand, the trial court apparently felt a likelihood that the defense was rendered more difficult by the lateness of the notice but correctly held that prejudice could not

operate to make untimely notice which was given "as soon as practicable." On the other hand, we are not sure whether the Appellate Division found prejudice and permitted it to redound against the insured in assaying whether there was in fact a breach of the notice provision.

It is evident in the cited cases that the Appellate Division, if free to do so, would have rejected the holding of *Whittle* that prejudice need not be shown. But the attempt to get around *Whittle* in the manner we have described is unsatisfactory. When the subject of prejudice is taken into account in deciding whether the policy was breached, a finding that an untimely notice sufficed because no prejudice ensued seems in ultimate effect to run against *Whittle,* while, as we said above, to render insufficient because of prejudice a notice which otherwise would be timely would place the insured in a poorer position than under *Whittle.* We therefore are obliged either to stay with *Whittle* or to acknowledge that the position it took has since been overrun.

█ *Whittle* approached the subject in classical contractual terms. Thus it said (130 *N. J. L.,* at *p.* 581), "the law does not make a better contract for the parties than they chose to make for themselves," and that "our 'function' is to 'enforce a contract as written,' " and that the question was simply whether the insured fulfilled what the policy denominated "a condition precedent." But since then we have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit. *Allen v. Metropolitan Life Ins. Co.,* 44 *N. J.* 294, 305 (1965) ; *Merchants Indemnity Corp. v. Eggleston,* 37 *N. J.* 114, 121 (1962) ; *Mazzilli v. Accident & Casualty Ins. Co. of Winterthur,* 35 *N. J.* 1, *pp.* 7–8 (1961) ; *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N. J.* 475, 488 (1961). And although the policy

may speak of the notice provision in terms of "condition precedent," as *Whittle* observed, nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds. It would also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated. To that end companies are franchised to sell coverage. We should therefore be mindful also of the victims of accidental events in deciding whether a forfeiture should be upheld.

The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis,[2] and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's.[3]

The evidence well supported the trial court's finding that the insureds acted reasonably and in good faith and that therefore the notice provision was not breached. This being so, we need not pursue the further question whether the

---

[2] As we pointed out in footnote 1, *N. J. S. A.* 17:28–2 requires the policy to read that failure to give notice within a prescribed time shall not invalidate a claim if notice was given as soon as was reasonably possible. The statute does not prevent a carrier from offering a more favorable provision and hence, notwithstanding the statute, it is correct to say that the carrier offers its provision on a take-it-or-leave-it basis.

[3] The cases appear to conflict in their allocation of the burden of proof, in the sense of the burden of ultimate persuasion, on the issue of breach. As to the covenant to cooperate, the burden of proof is placed on the carrier in *Mariani v. Bender, supra,* 85 *N. J. Super.,*

carrier was likely prejudiced by the lateness of the notice. The judgment of the Appellate Division is accordingly reversed and the judgment of the trial court is affirmed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For affirmance*—None.

---

at *p.* 500. So to the same effect, see 7 *Am. Jur. 2d, Automobile Insurance,* § 176, *pp,* 509–510. In actions upon benefit certificates in which the defendant claimed the insured failed to pay an assessment, the burden of proof was placed on the defendant in *Supreme Assembly, etc. v. McDonald,* 59 *N. J. L.* 248, 254 (*E. & A.* 1896), and *Van Etten v. Grand Lodge, &c.,* 72 *N. J. L.* 61, 64 (*Sup. Ct.* 1905). But with respect to the conventional life insurance policy which requires payment of periodic premiums without prior assessment thereof, the burden is placed upon the claimant to prove payment of the premiums. *Ruggiro v. Prudential Ins. Co.,* 113 *N. J. L.* 561 (*Sup. Ct.* 1934) ; *Moyna v. Prudential Life Ins. Co.,* 96 *N. J. Eq.* 293 (*E. & A.* 1924). In an action on a theft policy in which the carrier asserted that the insured breached the provision requiring immediate notice of loss, it was held the burden of proof was the insured's. *Orr Trucking & Forwarding Co. v. Metropolitan Surety Co.,* 77 *N. J. L.* 749, 752–753 (*E. & A.* 1909). With respect to notice of loss or accident under liability policies, conflicting statements appear. See 7 *Am. Jur. 2d, Automobile Insurance,* § 139, *p.* 467 ; § 143, *p.* 472 ; § 144, *p.* 474 ; 8 *Appleman, Insurance Law and Practice* § 4732, *p.* 19 (1962) ; 13 *Couch, Insurance 2d,* § 49 :123, *p.* 713 (1965). The burden of proof is placed on the insured in *Whittle v. Associated Indemnity Corp., supra,* 130 *N. J. L.,* at *p.* 578–579. Since in substance we are dealing with forfeitures, we believe the ultimate burden of persuasion should rest with the carrier. The burden of adducing evidence is another matter, and as to this the carrier of course does not have to speculate upon and rebut hypothetical possibilities when the insured alone is in a position to make an affirmative showing of the material facts. Thus although the carrier can offer evidence that it received no notice or the date upon which notice was first received, the insured has the burden of getting into the record whatever facts he relies upon to excuse or explain away what on the surface would appear to be a failure to comply with the policy provision. But the ultimate burden of persuasion on the total record remains with the carrier.