763 A.2d 312 (2000)
335 N.J. Super. 591
AVIATION CHARTERS, INC., Plaintiff-Respondent,
v.
AVEMCO INSURANCE COMPANY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2000.
Decided December 21, 2000.
*313 John E. Salmon, argued the cause for appellant (Rawle & Henderson, attorneys; Joseph A. Ricchezza and Phillip J. Meyer, of counsel, Philadelphia, PA; Mr. Meyer, on the brief).
George T. Dougherty, Lawrenceville, argued the cause for respondent (Katz & Dougherty, attorneys; Mr. Dougherty, on the brief).
Before Judges CONLEY, WECKER and LESEMANN.
The opinion of the court was delivered by CONLEY, J.A.D.
Defendant Avemco Insurance Company (Avemco), an aviation insurer, appeals summary judgment granted plaintiff Aviation Charters, Inc. (Charters), its insured. The effect of the summary judgment obligates Avemco to cover Charters' aircraft property damage loss of $52,500 despite the existence of a clear and unambiguous exclusionary clause in the insurance policy. The motion judge concluded that the exclusionary clause could not be resorted to as Avemco could not prove a causal connection between the circumstances that triggered application of the exclusion and the loss. We reverse.
The pertinent facts are not particularly complex or disputed. The property damage was sustained by one of plaintiff's aircrafts that was covered, at the time of the damage, by Avemco's policy. However, the policy contains an exclusionary clause which applies where the insured aircraft is "operated in flight by a pilot who is not approved [as defined by the policy]." The policy defines "in flight" as "the time starting when your insured aircraft moves forward for takeoff and continues until it has landed. It has landed when it has safely stopped or left the runway under control." An "approved pilot" is a pilot who has logged at least 5000 total flight hours. It is undisputed that at the time the property damage occurred, the pilot operating the aircraft had logged only 2000 total flight hours.
As to the occurrence itself, the record before the motion judge established without dispute that the damage was sustained by the aircraft after it had landed and while it was taxiing on the runway. It had neither "safely stopped" nor "left the runway under control" and, thus, under the specific definition of the policy, was still "in flight." Since the aircraft was still "in flight" and the pilot was not an "approved *314 pilot," the exclusionary clause was applicable regardless of the cause of the damage.[1]
Plaintiff presents neither ambiguity nor directly[2] applicable public policy reasons, either statutory or adjudicatory, that would countenance against application of the plain terms of the policy. The legal principles that must govern our analysis under these circumstances, then, are rather well-established. Generally it is said that insurance contracts will be construed in accordance with the reasonable expectations of the average policy holder and any ambiguity must be resolved against the insurer. Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999). In the absence of a definition of a particular term used in the policy, the term or terms will be interpreted in accordance with the "plain, ordinary meaning." Ibid.; Boddy v. Cigna Prop. & Cas. Co., 334 N.J.Super. 649, 656, 760 A.2d 823 (App.Div.2000).
Where an exclusionary clause is involved, such clauses are narrowly construed; indeed it is the insurer's burden to establish the exclusion. American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998). But where the words of an exclusionary clause are clear and unambiguous, "a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990); Cobra Prod., Inc. v. Federal Ins. Co., 317 N.J.Super. 392, 400, 722 A.2d 545 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999). Although we favor construing insurance policies so as to provide coverage, we cannot "write for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529, 562 A.2d 208 (1989). Thus, while where there are several interpretations of an exclusion's meaning we would tend to favor the one for coverage, Cobra Prod. v.. Federal Ins. Co., supra, 317 N.J.Super. at 401, 722 A.2d 545, "[t]his does not mean ... that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage", Stafford v. T.H.E. Ins. Co., 309 N.J.Super. 97, 105, 706 A.2d 785 (App.Div.1998). This is so because exclusionary clauses are presumptively valid and will be given effect if "`specific, plain, clear, prominent, and not contrary to public policy.'" Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997) (quoting Doto v. Russo, 140 N.J. 544, 559, 659 A.2d 1371 (1995)). See Zacarias v. Allstate Ins. Co., 330 N.J.Super. 231, 234, 749 A.2d 394 (App. Div.2000); Boddy v. Cigna Property & Cas. Co., supra, 334 N.J.Super. at 658-59, 760 A.2d 823.
Charters makes no effort to address these principles. Neither does the dissent. Rather, in addition to referring to out-of-state "minority view cases" which Charters and the dissent claim are illustrative of the "modern trend" (to which we will shortly return), Charters and the dissent assert that Cooper v. Government Employees Ins. Co., 51 N.J. 86, 237 A.2d 870 (1968), supports the motion judge's determination. The court in Cooper, Charters and the dissent assert, "struck a blow for the typical insured ... when it refused to give force to a plainly-worded clause in a motor vehicle policy." Charters and the dissent contend this "blow" extends to clear and *315 unambiguous exclusionary clauses. We do not believe such a broad reading of Cooper is warranted.
To begin with, Cooper did not concern an exclusionary clause, much less a clear and unambiguous one. It concerned a provision governing the timeliness of a notice of claim, characterized by other courts as a "condition subsequent." Cooper, supra, 51 N.J. at 91, 237 A.2d 870; AVEMCO Ins. Co. v. Chung, 388 F.Supp. 142, 150-51 (D.Haw.1975).
The dissent sees no difference between a notice provision such as that in Cooper, which is unrelated to the scope of coverage but simply acts "to aid the insurance carrier in investigating, settling and defending claims," Zuckerman v. National Union Fire Ins. Co., 100 N.J. 304, 323, 495 A.2d 395 (1985), and an exclusionary clause. This distinction between the type of notice provision in Cooper, and the governing coverage provisions of an insurance policy was explained by the Court in Zuckerman v. National Union Fire Ins. Co., supra, 100 N.J. 304, 495 A.2d 395. There, in the context of a "claims made" policy, the Supreme Court said:
The automobile liability policy in Cooper was a classic occurrence policy that provided the insured with coverage in the event of her negligence. The notice requirement in that policy did not define the coverage provided by the policy but rather was included to aid the insurance carrier in investigating, settling, and defending claims .... Accordingly, the requirement of notice in an occurrence policy [such as that in Cooper] is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed.

By contrast, the event that invokes coverage under a "claims made" policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

[100 N.J. at 323-24, 495 A.2d 395 (emphasis added).]
The court, thus, rejected the insured's claim that the insurer could not enforce the policy's provision requiring a claim to be made during the period of the policy unless it could establish "appreciable prejudice." Zuckerman, 100 N.J. at 322, 495 A.2d 395. In doing so, our Supreme Court limited Cooper to non-coverage provisions, i.e., those conditions relating to subsequent, non-coverage, events. Imposing a burden upon the insurer where it seeks to deny coverage based upon a non-coverage event to demonstrate prejudice, as the Court did in Cooper, imposes no particular harm to the insurer and does promote the policy against forfeiture of the coverage for which the insured paid his or her premiums.
The dissent equates application of the exclusionary clause here to nothing more than "trigger[ing] ... forfeiture because of an immaterial noncompliance with a policy provision." This view eschews the fact that clear, unambiguous exclusionary clauses in insurance policies are coverage related clauses. They directly affect the risk the insurer assumes and upon which premiums are established. Moreover, the exclusionary provision here is not a hypertechnical notice provision. It relates to pilot qualifications and, thus, aircraft safety. Enforcement of its clear and unambiguous terms would serve to encourage compliance with those qualifications, certainly a countervailing policy consideration to the concerns of forfeiture.
*316 Charters in its appellate brief points to Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 584 A.2d 190 (1991), as "evidence of the balance and fairness which can be produced by maintaining Cooper's focus on the expectations of the parties when the policy was being written" (emphasis in original). Manzo has no application to this case. To begin with, Manzo concerns a misrepresentation in the context of a life insurance application policy, triggering the application of N.J.S.A. 17B:24-3. See n. 2, supra. But, even in the context of that statute and a claim of material misrepresentations by the insured, our Supreme Court has expressly rejected causation as a necessary element of the insurer's burden when seeking to disclaim coverage premised upon such misrepresentations. In doing so, the Court said:
The Appellate Division recognized that an insurer need show only that the misrepresentation materially affected either the acceptance of the risk or the hazard assumed. 234 N.J.Super. at 293-94, 560 A.2d 1215. After determining that Manzo's misrepresentations did not influence Mass. Mutual's acceptance of the risk, it further concluded that the false statements did not materially affect the "hazard assumed" by Mass. Mutual. Id. at 294, 560 A.2d 1215. Under its construction of N.J.S.A. 17B:24-3(d), "the hazard assumed ... includes the requirement that there be a causal connection between the insured's false statements and the ultimate cause of death." Id. at 294, 560 A.2d 1215. In so construing the statute, the court implicitly rejected, without citing, the earlier decision of another panel of the Appellate Division that "emphatically reject[ed] the ... suggestion that there must be a causal relationship between an applicant's false statements and the cause of his death [to prevail in an action to] rescind a life policy [because of] ... equitable fraud." Formosa [v. Equitable Life Assurance Soc'y,] 166 N.J.Super. [8,] 22, 398 A.2d 1301 [(App.Div.), certif. denied, 81 N.J. 53, 404 A.2d 1153 (1979)].

By requiring a causal connection between the disability misrepresented and the insured's death, the decision below conflicts not only with Formosa, but also with the general rule that "in the absence of a statute establishing a different rule, there need be no causal connection between the cause of death and the misrepresentation." Couch, supra, § 37:110 at 632. This rule is accepted by a majority of jurisdictions. Couch, supra, §§ 37:87 at 102 and 37:110 at 632; Appleman, supra, § 245 at 125; R. Keaton and A. Widiss, Insurance Law, A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices 572 n.20 (West 1988) (the "clear majority rule" is that no causal connection is required); see, e.g., Shafer v. John Hancock Mut. Life Ins. Co., 410 Pa. 394, 399, 189 A.2d 234 (1963) ("It is of no consequence that the death ensued from a cause unconnected with the false representations.").
[122 N.J. at 117-18, 584 A.2d 190 (emphasis added).]
And see Weinstein v. Mutual Benefit Life Rehab., supra, 313 N.J.Super. at 614, 713 A.2d 569 ("[i]n Manzo, our Supreme Court concluded that no causal connection between an insured's false statements and the ultimate cause of death is required..."). If the court will not impose the burden of a causal nexus where statutory "materiality" is required, most assuredly it will not do so where such requirement does not exist.[3]
We, then, turn to the out-of-state cases. The majority of those cases reject the proposition that, in the context of aviation *317 insurance, a causal nexus between the loss and a coverage disclaiming event is required before the insurer can disclaim coverage. See generally, Noralyn O. Harlow, Annotation, Aviation Insurance: Causal Link Between Breach of Policy Provisions and Accident as Requisite to Avoid Insurer's Liability, 48 A.L.R. 4th 778 (1986); 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 155:23 (1998). E.g. Arnold v. Globe Indem. Co., 416 F.2d 119, 122 (6th Cir.1969); Ranger Ins. Co. v. Kovach, 63 F.Supp.2d 174, 180-82 (D.Conn.1999); National Ins. Underwriters, Inc. v. Bequette, 280 F.Supp. 842, 844 (D.Alaska 1968), aff'd, 429 F.2d 896 (9th Cir.1970); Grigsby v. Houston Fire & Cas. Ins. Co., 113 Ga.App. 572, 574, 148 S.E.2d 925, 927 (1966); Schneider Leasing, Inc. v. United States Aviation Underwriters, Inc., 555 N.W.2d 838, 841-42 (Iowa 1996); Avemco Ins. Co. v. White, 841 P.2d 588, 590-91 (Okla.1992); Economic Aero Club, Inc. v. Avemco Ins. Co., 540 N.W.2d 644, 646 (S.D.1995).
There is, in this unique area of aircraft insurance, a minority view. Finding that "[o]nly their number, not the[ ] reasoning [of the majority cases], lend support," some courts have concluded that causality is a key element of the insurer's burden to avoid coverage on the notion that, as a matter of public policy, denial of coverage to the insured based on a "technicality" would be unfair. Bayers v. Omni Aviation Managers, Inc., 510 F.Supp. 1204, 1207 (D.Mont.1981); Avemco v. Chung, supra, 388 F.Supp. at 151; South Carolina Ins. Co. v. Collins, 269 S.C. 282, 237 S.E.2d 358, 362 (1977).
These "minority view" cases have rejected the insurer's attempts to disclaim coverage based on pilot qualifications where the insurer has not demonstrated a causal connection between the pilot's lack of qualification and the loss. Fidelity & Cas. Co. of New York v. Burts Bros., Inc., 744 S.W.2d 219 (Tex.App.1987). See 48 A.L.R. 4th, supra at § 4. Many of the cases, however, are distinguishable. Some cases arise in the context of state "anti-technicality" statutes. See Puckett v. United States Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984) (relying in part upon a Texas "anti-technicality" statute applicable to fire insurance policies which states "[n]o breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property." Tex.Ins.Code Ann. art. 6.14.[4]). Other cases involve insurance policies which do not contain a specific exclusionary clause. See Bayers v. Omni Aviation Managers, Inc., supra, 510 F.Supp. at 1207 ("[i]n this case the insurance company could easily have incorporated the medical certification requirement in its exclusion clause. It did not, and it must be held to provide coverage."). South Carolina Ins. Co. v. Collins, supra, 269 S.C. 282, 237 S.E.2d 358, upon which the dissent relies, is grounded upon "a line of South Carolina cases involving contracts of automobile liability and life insurance." Id., 237 S.E.2d at 360.
*318 New Jersey does not have an "anti-technicality" statute that would apply here.[5] And, unlike, for instance, South Carolina, we have consistently enforced exclusionary clauses that are clear and unambiguous without imposition of a causal nexus where the exclusionary clause does not facially so require. We cannot give the insured more than he paid his premiums for.
We add the following final comments. The exclusionary clause here has no causality requirement. Where, of course, an exclusionary clause has such a requirement, causality will be a consideration in determining its application under the particular attendant circumstances. See e.g., Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 170 A.2d 22 (1961) (exclusion in accident insurance policy for losses not directly caused by accident); Mahon v. American Cas. Co. of Reading, Pa., 65 N.J.Super. 148, 167 A.2d 191 (App.Div.), certif. denied, 34 N.J. 472, 169 A.2d 746 (1961) (same). See also American Motorists Ins. Co. v. L-C-A Sales Co., supra, 155 N.J. 29, 713 A.2d 1007 ("arising out of and in the course of employment" requirement of employer's comprehensive general liability exclusionary clause precluded coverage for employee's wrongful discharge claim.).
On the other hand, where exclusionary clauses have no causality requirement and their meaning is clear and unambiguous, neither we nor the Supreme Court have hesitated in applying them even where the triggering event of the clause has no relationship to the cause of the particular loss. See, e.g., Rutgers Cas. Ins. Co. v. Collins, 158 N.J. 542, 730 A.2d 833 (1999) (exclusion in automobile policy for non-permitted drivers); Ryan v. LCS, Inc., 311 N.J.Super. 618, 710 A.2d 1050 (App.Div.1998), aff'd o.b., 157 N.J. 251, 723 A.2d 975 (1999) (same); Campbell v. Lion Ins. Co., 311 N.J.Super. 498, 710 A.2d 576 (App.Div. 1998) (UM and UIM exclusion in automobile policy where vehicle is being used to carry property for a fee); Sneed v. Concord Ins. Co., 98 N.J.Super. 306, 237 A.2d 289 (App.Div.1967) (automobile policy exclusion for nonlicensed driver); Saliba v. American Policyholders Ins. Co., 158 N.J.Super. 48, 385 A.2d 328 (Law Div. 1976), aff'd, 157 N.J.Super. 476, 385 A.2d 239 (App.Div.1978) (aircraft policy exclusion for renter pilots).
Reversed and remanded.
LESEMANN, J.A.D., dissenting.
Both parties present this case as one of first impression in New Jersey. Both also agree there are two distinct lines of cases in this country: one, a so-called majority rule, holding that a forfeiture provision which excludes insurance coverage ostensibly purchased by an insured will be given effect whenever the language of the policy indicates its applicability, regardless of whether the described condition had any relationship to the loss in question; and the other, a minority view, holding that such a provision will be given effect only if there is some causal connection between the forfeiture clause and the loss in question. Thus, we are told, we have the option to select the better rule. Not surprisingly, however, the parties disagree as to which is the better rule.
*319 I believe the parties are only partially correct in describing this as a case of first impression. In fact, I am satisfied that the principles laid down by our Supreme Court in Cooper v. Government Employees Ins. Co., 51 N.J. 86, 237 A.2d 870 (1968), are applicable here, virtually mandate our rejection of the defendant's attempted denial of plaintiff's claim, and should lead us to apply the (minority) rule which one leading text writer has described as "the trend of modern authority":
[T]here is no forfeiture if the breach of condition or warranty did not contribute to the loss, or did not increase the risk at the time of the loss.
[Appleman, 6A Insurance Law and Practice, § 4146, at 439 (1972).]
The facts are set out in the majority opinion and I shall only briefly restate them here. The policy in question provides coverage for airplanes owned by plaintiff. It contains an exclusionary clause stating that the coverage otherwise provided does not apply when the insured's aircraft is "operated in flight by a pilot who is not approved." In a related provision, "approved pilots" are defined as pilots who, among other things, have flown 5,000 hours.
The pilot here had fewer than 5,000 hours of flight time, but qualified in all other respects under the policy. The language of the exclusionary provision applied because, although the loss occurred while the plane was taxiing towards a final stop after landing, it was still "in flight" according to the expansive definition of that term in the policy. That definition states that a plane is "in flight" beginning "when [the]... aircraft moves forward for takeoff and continues until it has landed. It has landed when it has safely stopped or left the runway under control." Both parties agree that "in flight" status terminates when the airplane has either come to a full stop, or has turned off the main runway toward its final resting place.
Here, the airplane had not yet come to a full stop or turned off the main runway when a spring device in the nose gear malfunctioned and the nosewheel of the plane collapsed. The propellers and part of the fuselage fell to the ground, causing damages totaling $66,000. Plaintiff says, and defendant does not deny, that such nose gear malfunctions are not uncommon with the type of aircraft involved here and they frequently occur during ground movement when the jostling and bumping of the spring device exacerbates the problem. It is acknowledged that the pilot's skill or lack of skill, and the number of air hours he had previously flown, had nothing to do with the loss. It was purely and simply a mechanical malfunction. Indeed, defendant acknowledges that the collapse could have occurred while a mechanic was simply moving the airplane from one place to another, or while the plane was being towed on the ground.[6]
There was, in short, no nexus between the exclusionary clause based on the pilot having less than 5,000 flight hours and the loss sustained. Nevertheless, under the majority rule cited above, coverage would still be barred. Under the minority rule, however, the absence of that nexus would bar application of the exclusionary clause and thus the normal coverage provisions of the policy would apply.
As noted, I believe the principle of Cooper v. Government Employees Ins. Co. applies here and should dictate our conclusion: rejection of the insurer's defense which is based on an exclusionary (forfeiture) provision bearing no relation to the facts of the case and which, if applied, would deprive the insured of the very coverage it purchased, without protecting any legitimate interest of the insurer.
*320 Cooper dealt with a simple, standard provision in an automobile insurance policy. It required the insured to give his insurer timely notice of an accident. The insured failed to do that. The insurer pointed to the policy language, to the insured's failure to comply with that language, and thus denied responsibility. It did not claim prejudice from the lack of timely notice. Its claim was simply that the policy required a certain action, the insured had not taken that action, and thus the insured lost the coverage it otherwise would have enjoyed.
The Supreme Court rejected the claim. It refused to endorse application of a forfeiture provision which had no nexus to the loss in question. It reviewed and ultimately overruled a previously controlling decision of the Court of Errors and Appeals, Whittle v.. Associated Indem. Corp., 130 N.J.L. 576, 33 A.2d 866 (E. & A.1943), which it described as approaching "the subject in classical contractual terms." 51 N.J. at 93, 237 A.2d 870. Whittle had focused on whether the policy's notice provision constituted a "condition subsequent" or a "condition precedent" to liability, and held that an insurer may take advantage of a late notice forfeiture clause regardless of whether it had been prejudiced by such late notice. The Court in Cooper, however, noted that since Whittle, it had
recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectations of the purchaser so far as its language will permit.

[Ibid.]
Further, and most significantly, the Court described the notice provision in the policy before it in realistic terms which apply equally to the critical provision in the policy before us:
[A]lthough the policy may speak of the notice provision in terms of "condition precedent,"... nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically, or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach....
The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice.

[Id. at 93-94, 237 A.2d 870.]
Accordingly, and since there was no showing that noncompliance with the notice provision had any adverse effect on the insurer, the Court denied the carrier's attempted rejection of coverage.
The position of the carrier here is remarkably similar to that of the carrier in Cooper. It is set out in a letter from defendant's claims manager to plaintiff's attorney. The letter notes that plaintiff's claim was denied because plaintiff had allowed an "unapproved pilot to operate the aircraft." It says the claim "was not denied because the pilot did not have the required skills to safely operate an airplane." It did not matter, the letter said, who was operating the plane, and how skilled he was, if he did not meet the "approved" definition in the policy. For no other reason than that the pilot had not met that definition, "the claim was denied."
That letter is certainly unambiguous. However, its reasoning is also indistinguishable from that raised by the insurer *321 and rejected by the Court in Cooper. There, the insurer simply said that the policy called for prompt notice and there had not been prompt notice. Accordingly, said the carrier, whether or not it had been prejudiced, it had a right to, and it did, deny the claimant any recovery under his policy. Here the insurer says the policy required an "approved pilot" with 5,000 air hours, but the pilot had less than 5,000 hours. Accordingly, and whether or not the insurer was prejudiced, it had a right to, and it did, deny the claimant any recovery under his policy. I see no distinction between the arguments. One was rejected in Cooper. the other should be rejected here.
The majority distinguishes Cooper by saying the issue there did not concern an exclusionary clause but rather dealt with what is characterized as a "condition subsequent." The majority is, of course, correct that the facts of the two cases are different and the claimed basis for excluding coverage is different. However, that difference is more a matter of semantics than substance. Both cases involve attempts by an insurer to deny the coverage purchased by an insured because of policy provisions which had nothing to do with the insured's loss and subsequent claim. Whether one or the other dealt with an event or condition that preceded or followed the loss is immaterial. In both cases, the issue is whether courts should limit enforcement of a forfeiture or disqualification provision to cases where the provision had some adverse effect on the insurer. Cooper answered that question in the affirmative, and I believe we should do the same. When it is clearly demonstrated that a forfeiture provision had no adverse effect on the insurer, and when the insurer's position rests exclusively on a literal reading of policy language which had no effect on the loss in question, courts should reject an insurer's attempt to deprive the insured of the coverage he has purchased and the insurer has agreed to provide.[7]
The majority also refers to Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 584 A.2d 190 (1991) and Weinstein v. Mutual Ben. Life in Rehab., 313 N.J.Super. 609, 713 A.2d 569 (App.Div.1998). Those cases involve different issues and different principles and do not dictate a finding here in favor of the insurer.
Manzo involved a form of equitable fraud. The insured misrepresented his physical condition on an application for life insurance by concealing his serious (and uncontrolled) diabetes. He subsequently died from events unrelated to the condition he had concealed, but the Court held the insurer could nevertheless disclaim coverage if the misrepresentation had "influenced" the company's judgment with respect to either its issuing the policy or the premium it would charge. On the evidence presented, the Court also found that the misrepresentation had been material since, had the insured disclosed his true health and medical history, the company would have requested more information and, if it had finally determined to issue a policy at all, would have done so only at a premium two and one-half times the standard rate it actually charged Manzo. 122 N.J. at 117-18, 584 A.2d 190.
In sum, the insured in Manzo had obtained an unwarranted benefit. He received a policy he might otherwise never have received, and obtained it at a lower premium than he otherwise would have been charged. By itself, that was more than sufficient to warrant denial of coverage and the Court, understandably, did not also require the company to demonstrate that the concealed additional risk had actually caused the insured's death. See also, as involving essentially the same issues as *322 Manzo, Formosa v. Equitable Life Assurance Soc., 166 N.J.Super. 8, 398 A.2d 1301 (App.Div.) certif. denied, 81 N.J. 53, 404 A.2d 1153 (1979).
Zuckerman v. National Union Fire Ins. Co., 100 N.J. 304, 495 A.2d 395 (1985) involves an analogous situation. There the Court dealt with a "claims made" policy that is, a policy which defined its coverage in terms of claims made and transmitted to the insurer during the policy period.[8] The Court affirmed the insurer's rejection of a claim for which notice had not been provided during the policy period. However, it did so, not because of a forfeiture clause which had no relationship to the loss in question, but rather because the insured lossdefined as one brought to the attention of the carrier during the policy periodsimply did not occur during the policy period. Unlike Cooper, the absence of notice in Zuckerman did not simply trigger a purported forfeiture because of an immaterial noncompliance with a policy provision. Rather, it went to the basic coverage provided by the policy. As the Court noted, if accepted, the claimant's argument would give him the benefit of both a "claims made" policy and an "occurrence" policy and would result in an extension of the coverage he had purchased from the carrier:
[A]n extension of the notice period in a "claims made" policy constitutes an un-bargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy.

[100 N.J. at 324, 495 A.2d 395.]
Clearly, that is not the case here. The insured does not seek to expand coverage beyond that provided by the policy. Rather, it seeks to avoid a forfeiture of that coverage because of a technical non-compliance with a policy provision which bore no relationship to the loss involved. The majority's characterization of that policy provision, as one "governing coverage" or "coverage related" is, I believe, unrealistic and artificial.
Finally, as to application of the Cooper rule to forfeiture cases beyond those based on late notice, it is significant to note the reading given Cooper by the court in AVEMCO Ins. Co. v. Chung, 388 F.Supp. 142 (D.Hawai'i 1975). In Chung, the policy required that a pilot have a "current medical certificate." After a plane exploded in flight, the insurance company learned that the pilot had not filed such a certificate, and on that basis, it denied coverage. It made no attempt to relate the non-filing of the certificate to the loss, and it was obvious that the explosion bore no relationship to that certificate. The court rejected the defense, finding persuasive authority for its conclusion from the New Jersey Supreme Court's Cooper decision. Clearly the District Court saw no significant difference between its case and Cooper, just as I see no significant difference between our case and Cooper:
As this court sees it, the present Hawaii law is in accord with that expressed in Cooper v. Government Employees Ins. Co., 51 N.J. 86, 237 A.2d 870 (1968):
To deny the insured the very thing paid for ... even though there is no likelihood that (the insurer) was prejudiced by the breach ... would be unfair to the insureds. It would *323 also disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated.

[388 F.Supp. at 151.]
Were I to assume the inapplicability of Cooper, I would still conclude that the judgment of the trial court should be affirmed, and the attempt by defendant to reject plaintiff's claim should be denied. I find no New Jersey authority prohibiting that conclusion and, with this court free to choose between the majority and minority rules discussed above, I have no hesitancy in concluding that the minority rule is preferable, should be adopted by this court, and should lead to an affirmance.
I agree with the observation of the South Carolina Supreme Court that, "[a]fter examination of the decisions cited by the appellant [those applying the majority rule], we find them unpersuasive. Only their number, not their reasoning, lends support to a (holding for the insurer) here." South Carolina Ins. Co. v. Collins, 269 S.C. 282, 237 S.E.2d 358, 362 (1977). See also, the comments of the Pennsylvania Supreme Court in a case dealing with a notice requirement, but with reasoning equally applicable here,
In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

[Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A.2d 193, 197 (1977)].
And see, Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 409 N.E.2d 185, 187 (1980) (also dealing with late notice), citing Cooper in support of its holding that an insurance company could deny coverage for non-compliance with a policy forfeiture provision only if the provision bore some relation to the loss, and referring to the minority rule as representing "a recent trend to eschew such technical forfeitures of insurance coverage unless the insurer has been materially prejudiced by virtue of late notification."
In contrast to that reasoning, which I find compelling, I see little merit in the insurer's argument here. The clause requiring 5,000 hours of air time was obviously inserted in the policy to protect the company against loss caused by unskilled or under-skilled pilots. Here, since the skill or lack of skill of the pilot had nothing to do with the loss covered by the policy, the only rationale I can see for holding in favor of the company is a syllogism that says, because the language is in the policy it must be enforced as written, regardless of whether it makes sense and regardless of whether it had any significance. That is precisely the kind of unrealistic formalism embodied in the former rule set out in Whittle v. Associated Indem. Corp., which was expressly rejected in Cooper.
I believe that debate centered on the language used to describe a clause in an insurance policywhether the provision constitutes a condition precedent, or a condition subsequent, a clause defining coverage, or one providing for a forfeitureis not particularly helpful. The label is immaterial. However, while the facts and specific holding of Cooper and similar cases from other jurisdictions can obviously be distinguished from this case, I believe they all articulate and represent a philosophy and a guiding principle which is rational, realistic and fair. They should be applied here, and they should lead us to affirm the trial court's award of summary judgment to plaintiff.
Finally, I note the majority's statement that a clause such as the one in issue here affects the risk to be assumed and/or the premium to be charged by an insurer, and also fosters air safety. There is nothing in *324 the record to support any of those statements and any such hypothesized effects may well be non-existent or de minimis. It is difficult to believe, for example, that the difference between what I consider the appropriate rule and that adopted by the majority would really have a significantly different effect on air safety.
I would affirm.
NOTES
[1] As to the cause of the damage, a report by the Federal Aviation Administration concluded that the downlock link assembly spring in the landing gear on the front wheel was "weak" causing the landing gear to buckle and the nose of the plane to collapse during "roll out."
[2] We use the term "directly" because plaintiff claims that N.J.S.A. 17B:24-3 expresses a legislative policy that exclusionary clauses should not apply absent causation. N.J.S.A. 17B:24-3 is inapposite. It concerns material misrepresentations "at the inception of" annuities and health insurance and life insurance policies. Weinstein v. Mutual Benefit Life in Rehab., 313 N.J.Super. 609, 614, 713 A.2d 569 (App.Div.1998). Moreover, our Supreme Court has rejected a causality requirement even where this statute applies. Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 118, 584 A.2d 190 (1991).
[3] The dissent treats our discussion of Manzo as though we directly rely upon it. We do not. We discuss Manzo because Charters relies upon it. As the dissent correctly points out, Manzo "involve[s] different issues and different principles." To the extent Manzo has any application, it is that even where materiality is a requirement for avoiding coverage, a causal nexus is still not required.
[4] Not all courts have agreed that such "anti-technicality" statutes require a causal nexus where pilot qualifications are at issue. In Schneider Leasing, Inc. v. United States Aviation Underwriters, Inc., supra, 555 N.W.2d at 841, for instance, Iowa Code Ann. § 515.101 provided: "[a]ny condition or stipulation in an application, policy, or contract of insurance making the policy void before the loss occurs, shall not prevent recovery thereon by the insured, if it shall be shown by the plaintiff that the failure to observe such provision or the violation thereof did not contribute to the loss." The Iowa court concluded that disclaimer of coverage based on required pilot qualifications did not trigger the Iowa "anti-technicality" statute because such qualifications concerned the risk to be insured and, thus, "simply places this particular loss outside the coverage afforded from the inception of the contract." Id. at 842.
[5] Plaintiff contends that N.J.S.A. 17B:24-3 is a comparable "anti-technicality" statute. As we have previously pointed out, that statute concerns life and fire insurance policies and annuities. It does not, as construed by our Supreme Court in Manzo, adopt a requirement of causation. Moreover, the statute focuses upon action and statements of the insured at the inception of the policy when the insurer determines whether to accept the risk and at what price. If that is the focus here, surely it cannot be said that the limitation of coverage premised upon the qualifications of the pilot was a mere "technicality" in the acceptance of the risk. United States Aviation Underwriters v. Cash Air, Inc., 409 Mass. 694, 697, 568 N.E.2d 1150, 1152 (1991) (pilot experience qualifications in aviation insurance policies "is significant as to the willingness of an insurer to underwrite the risk and defines the exposure to risk that the insurer is willing to assume for the premium charged.").
[6] There is also no question that if the malfunction had occurred a few minutes later, after the pilot had turned off the main runway, or brought the plane to a stop, the aircraft would no longer have been "in flight" and the language of the exclusionary clause would not have applied.
[7] As noted, both parties have acknowledged that the pilot had nothing to do with the damage to plaintiff's aircraft. However, in any case where such an issue is in dispute, I would require the insured to demonstrate the absence of a causal connection between the loss and any facially applicable forfeiture provision in its policy.
[8] The Court took pains to distinguish that kind of policy from its alternativean "occurrence" policywhich insured against events occurring during the life of the policy. Quoting one explanation of the difference between the two, the Court said:

In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.
[Id. at 310-11, 495 A.2d 395, ; quoting from S. Kroll, "The Professional Liability Policy `Claims Made'", 13 Forum 842, 843 (1978).]