85 N.J. Super. 490 (1964)
205 A.2d 323
JOSEPH MARIANI, ET AL., PLAINTIFFS-RESPONDENTS,
v.
EDWARD BENDER AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS AND CROSS-CLAIMANT-RESPONDENT, AND SELECTED RISKS INSURANCE COMPANY, DEFENDANT-APPELLANT ON APPEAL AND ON CROSS-CLAIM, AND ELIZABETH T. WEDAKIND, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1964.
Decided December 4, 1964.
*493 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
*494 Mr. Michael Patrick King argued the cause for defendant-appellant (Messrs. Kisselman, Devine, Deighan & Montano, attorneys; Mr. Neil F. Deighan, Jr., of counsel).
Mr. Alvin E. Granite argued the cause for plaintiffs-respondents (Messrs. Granite & Granite, attorneys).
Mr. Burchard V. Martin argued the cause for defendant-cross-claimant-respondent Liberty Mutual Insurance Company (Messrs. Taylor, Bischoff, Neutze & Williams, attorneys).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendant Selected Risks Insurance Company (Selected Risks) appeals from a declaratory judgment that it has the primary obligation to defend and indemnify Edward Bender for any and all claims arising out of a certain hit-and-run accident occurring on July 30, 1961, in the Borough of Glassboro, Gloucester County, New Jersey, in which Robert Mariani and Vincent Sirolli were injured. The judgment also granted relief incidental to the declaratory ruling.
The basic facts are undisputed. In May 1961 Edward Bender obtained a $10,000 and $20,000 nonowner automobile liability policy from Liberty Mutual Insurance Company (Liberty Mutual). Such insurance was required by the State of New Jersey as a condition of restoring Bender's driver's license. Towards the end of July Bender took a second-hand automobile which he had just purchased to Frederic J. Wedakind, trading as Fred's Auto Service, for repairs and was loaned a vehicle to use while the repairs were being made. The loaned vehicle was insured under a $50,000 and $100,000 garage liability policy issued to Wedakind by Selected Risks, which policy covered the operation of owned vehicles in connection with the service station.
On July 30, 1961 Bender, while operating the loaned vehicle, was involved in a hit and run accident, resulting in injury *495 to Robert Mariani and Vincent Sirolli. Mariani was very seriously injured and was in a coma for thirty days. Bender did not stop his vehicle because he was driving on a "red license" and was fearful it would be revoked if his involvement in the accident became known.
A few days later, an employee of Wedakind, who had been sent to Bender's home to pick up the loaned vehicle, noticed that it had been involved in an accident. The employee notified the police who impounded the vehicle and questioned Bender about the damage to it. Bender insisted that he had "clipped a tree" at his brother's, although it was pointed out to him that there was a different color paint on the damaged fender. Bender persisted in his story until October 11 when he finally admitted to the police his involvement in the accident in which Mariani and Sirolli were injured.
Following the initial questioning of Bender by the police, he consulted an attorney about his being a suspect in the hit-and-run accident. He told the attorney the same story that he had originally told the police. However, the attorney advised him to notify Liberty Mutual, his personal insurance carrier, and this was done.
There is some evidence that four or five days after the accident Wedakind spoke to the insurance agent who had written the Selected Risks policy about Bender's being involved in an accident while driving the vehicle which had been loaned to him and that he struck a young man. (Wedakind died suddenly on August 19.) The agent denied any such conversation and testified that the first he learned of the possible involvement of one of the Wedakind vehicles in an accident was on September 18 when Mrs. Wedakind asked him if her late husband had said anything about the accident. She then proceeded to give him the facts as she knew them at that time. The agent reported the matter to the branch manager of Selected Risks and an investigator was assigned to the case. The investigator spoke with Bender and told him that Selected Risks had coverage on the Wedakind vehicle. On September 26 the investigator obtained a signed statement *496 from Bender denying any involvement in the Mariani, Sirolli accident. The investigator also interviewed the police who outlined the facts upon which they "felt" that Bender was involved. Bender spoke with the investigator on several subsequent occasions and persisted in his denial.
As heretofore noted, Bender on October 11 finally told the police the true story of what had happened. Selected Risks learned of the confession within a day or so. On October 16 Bender went to Selected Risks' office and gave a written statement retracting his original statement, and giving a detailed and truthful version of the accident.
On October 20 counsel for Selected Risks sent Bender a letter setting forth the fact of coverage of the vehicle "which you were operating" and that under the terms of the policy "you may be considered as an additional assured * * * for any claims arising out of the said accident." The letter then set forth the following:
"At this time, it is undetermined whether the accident and claims resulting therefrom are within and covered by the terms and provisions of the said policy of insurance. Accordingly, and since it is deemed advisable to proceed with investigation and other necessary steps to protect your interests as well as those of Selected Risks Insurance Company, we hereby notify you that Selected Risks Insurance Company will undertake such further action as may be deemed necessary expressly reserving unto itself the right to disclaim any liability whatsoever. It is to [be] understood that any investigation or further action by Selected Risks Insurance Company shall not be construed as a waiver of any of the provisions, terms, conditions, exclusions, defenses, qualifications or limitations of the policy referred to above."
By written instrument dated the same date, Bender and Selected Risks executed a non-waiver agreement which, after reciting the facts of insurance coverage and Bender's operation of the vehicle at the time of an alleged accident, stated the following:
"* * * WHEREAS * * * it is undetermined whether the accident and any claims that may arise therefrom are within and covered by the terms and provisions of the above described policy of insurance;

* * * * * * * *
*497 It is, therefore, agreed by and between the undersigned that any action, interview, investigation or defense of said Municipal Court action on behalf of Edward Bender or any further actions with reference to said accident undertaken by the Selected Risks Insurance Company, its agents, servants or representatives, SHALL NOT CONSTITUTE A WAIVER OF NOR INVALIDATE any of the terms, conditions or provisions of the above described policy or of any of the rights or defenses thereunder pertaining to the undersigned.
The Selected Risks Insurance Company by undertaking any further action concerning the accident does not admit that above described policy affords any coverage to Edward Bender and said company does not and will not waive nor will any further action undertaken constitute a waiver of any of the provisions, terms, conditions, exclusions, defenses, qualifications or limitations set forth in said policy referred to herein above."
On or about November 15, 1961, Joseph Mariani, individually, and as guardian ad litem for Robert Mariani, instituted a civil action for damages against Bender, and Mrs. Wedakind as administratrix of the estate of Frederic J. Wedakind.
By letter dated December 7 Selected Risks sent Bender a formal disclaimer of liability. The letter stated:
"* * * It has previously been indicated to you that under ordinary circumstances the above mentioned policy of insurance would have afforded the coverage and protection to the limits of the policy for any liability arising out of the accident. However, your misrepresentations to the company with knowledge of their interest in the matter on your behalf constitutes a breach of the policy provisions. We therefore regret to inform you that Selected Risks Insurance Company hereby disclaims any obligation to afford to you any coverage or legal defense for any claims or actions that may be brought against you as a result of the accident."
Thereafter the copy of the summons and complaint which had been served upon Bender and which he had forwarded to Selected Risks was returned to him by Selected Risks with the suggestion that he turn it over to Liberty Mutual. (Selected Risks has not disclaimed liability with reference to the damage suit against the Wedakind estate.)
Liberty Mutual undertook the defense of Bender under a reservation of its right to claim that Selected Risks had the primary coverage. Also Liberty Mutual negotiated for $1,000 *498 a settlement of the claim of Vincent Sirolli arising out of the same accident.
The instant suit for declaratory judgment was filed in July 1962 by the Marianis. It sought an adjudication that Selected Risks was the "primary insurance carrier" as to Bender. An answer and counterclaim was filed by Bender and Liberty Mutual seeking substantially the same relief. Also Liberty Mutual, by cross-claim against Selected Risks, sought reimbursement for the $1,000 settlement of the Sirolli claim.
Selected Risks by its answer and pretrial order contentions, while admitting insurance coverage of Bender, defended on the ground that Bender had breached the terms and conditions of the policy (1) by failing to give notice of the accident as soon as practicable, and (2) by his deliberate misrepresentations had failed to cooperate with the carrier. By reason of the foregoing Selected Risks claimed that it was relieved of any obligation under the policy as far as Bender was concerned.
At the trial, Bender testified that until the investigator for Selected Risks spoke to him on September 22, he did not know whether or not there was an insurance policy covering the Wedakind car, and whether or not if there was a policy, it would extend coverage to him.
The trial court held that Selected Risks' receipt of notice on September 18 was not unreasonable under the circumstances, and that Bender's over-all conduct had not constituted a material violation of the cooperation clause of the policy. The court therefore held that Selected Risks had no right to disclaim liability as to Bender. It also held that Selected Risks' coverage of Bender was primary and Liberty Mutual's coverage was excess. Selected Risks was directed to reimburse Liberty Mutual for the $1,000 settlement of the Sirolli claim.
On this appeal Selected Risks contends that the trial court erred in finding that there had not been a substantial breach of either the notice clause or the cooperation clause of its policy. In essence, it is argued that the evidence of the breach *499 of both clauses is so compelling that the only conclusions which could have reasonably been reached were that there had been a failure to give notice as soon as practicable, and that there had been a failure to cooperate on the part of Bender. The trial court's determination that Selected Risks' coverage was primary is not otherwise challenged.
We consider first the matter of notice. It is settled that notice of the accident, in accordance with the terms of the policy, must be given by or on behalf of the insured. Compliance with such notice provision is a condition precedent to the insurer's liability under the policy. Miller v. Zurich Gen. Accident & Liab. Ins. Co., 36 N.J. Super. 288 (App. Div. 1955). However, the insurer to avoid liability has the burden of proving that there was a failure to give notice. Ordinarily the issue is one of fact for the jury unless the evidence is such that different inferences cannot reasonably be drawn therefrom. Bass v. Allstate Ins. Co., 77 N.J. Super. 491 (App. Div. 1962).
Preliminarily we note that Selected Risks did not disclaim on the ground that there had been a breach of the notice clause, as reference to the letter of disclaimer dated December 7, 1961 will show. Therefore, in the instant suit, it has no right to raise as a defense Bender's alleged failure to give notice. Moreover, Selected Risks has not claimed that its named insured (the Wedakind estate) failed to give proper notice, and it is defending the Mariani damage suit on behalf of such insured. If the notice of September 18 was considered adequate insofar as the named insured was concerned, we are at a loss to understand why such notice would not also apply to Bender whose name was given to the insurance carrier at that time. Cf. Costanzo v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 30 N.J. 262, 272 (1959).
On the merits, there was substantial evidence to support the trial court's determination that the time interval between the date of the accident and the giving of notice to the insurance carrier was not unreasonable. Bender could not be expected to notify Selected Risks until he became aware *500 that he came within the extended coverage of the policy. Costanzo, supra, at p. 272. He testified that he first learned of coverage by Selected Risks when its investigator spoke with him on September 22. However, prior thereto, Selected Risks had received notice of the alleged accident from Mrs. Wedakind, including the information that the vehicle had been loaned to Bender.
We consider next the claim of Bender's failure to cooperate. The legal principles are also undisputed. Compliance with the cooperation clause of an insurance policy is a condition precedent to the carrier's liability thereon. However, the burden of proving a failure to cooperate rests upon the insurance carrier. In order to relieve itself of liability under the policy the insurance carrier must show that the cooperation clause was deliberately breached in a material or essential particular. Pearl Assur. Co. Ltd. v. Watts, 58 N.J. Super. 483 (App. Div. 1959). Ordinarily, the issue is one of fact, unless the evidence is such that reasonable men could not differ as to the conclusion to be reached.
There is no doubt but that Bender was untruthful on September 25 when he spoke with the investigator and that he persisted in his untruthfulness until October 11 when he confessed to the police. A few days later he voluntarily gave a detailed truthful statement to the Selected Risks. Bender's recantation was made long before any suit for damages was filed. It does not appear that Selected Risks was handicapped in its investigation of the accident or was otherwise materially prejudiced. At the time its only concern was whether or not its policy afforded coverage of the accident. The letter of October 20 written by Selected Risks' attorney to Bender makes no mention of any alleged failure to cooperate (or for that matter an alleged failure to give notice). The only specific statement therein is that "At this time, it is undetermined whether the accident and claims resulting therefrom are within and covered by the terms and provisions of the said policy of insurance." The reservation of a right to disclaim *501 made in the letter must be understood as applying only to a possible lack of coverage.
The same for the non-waiver agreement, dated October 20, which Bender signed. A fair reading of this agreement manifestly indicates that the reservation therein of the carrier's right to disclaim, related only to the question of whether or not the policy afforded coverage of the particular accident. Nothing was said about alleged failure to cooperate (or failure to give notice). The alleged failure to cooperate was raised for the first time in the December 7 letter of disclaimer, after the Mariani suit for damages had been filed.
Even though an insured may have given his insurance carrier an untrue statement of the accident, no breach of the cooperation clause results if the untrue statement is promptly and seasonably corrected. Cf. Freyou v. Marquette Cas. Co., 149 So.2d 697 (La. Ct. App. 1963); Crook v. State Farm Mut. Auto. Ins. Co., 235 S.C. 452, 112 S.E.2d 241 (Sup. Ct. 1960); Annotation, "Liability insurance: misstatement by insured, later withdrawn or corrected, as breach of co-operation clause." 34 A.L.R.2d 264, 267 (1954). While the insurance carrier is not required to show prejudice in establishing a breach of the cooperation clause, Pearl Assur. Co. Ltd. v. Watts, 58 N.J. Super., supra, at p. 491, absence of prejudice to the carrier may be a factor in determining whether or not a misstatement was seasonably withdrawn or corrected.
Our conclusion is that the evidence was such that the fact finder could properly have found, as it did, that Bender's original statement was promptly and seasonably corrected so that there had been no "material violation" of the cooperation clause.
Affirmed.