J-E03004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL BARONE, JR. | : | |
| | : | |
| Appellant | : | No. 1528 WDA 2018 |

Appeal from the PCRA Order Entered October 1, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0006683-2013

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
J., STABILE, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                     **FILED: APRIL 15, 2021**

Paul Barone, Jr., appeals from the order, entered in the Court of

Common Pleas of Allegheny County, dismissing, without a hearing, his petition

filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-

9546.  Upon review, we affirm.

This Court previously summarized the facts of this case as follows:

In the early morning hours of March 3, 2013, John Sumpter was
shot and killed by a .40 caliber bullet while he was sitting in a
Dodge Intrepid parked across the street from a pizza shop in
Munhall, Pennsylvania.  Evidence from the scene established that
at least three different weapons were fired during the incident.
Video from the pizza shop's security camera showed, and
[Barone's] testimony confirmed, that [Barone] had fired
[approximately sixteen] shots in the direction of the Intrepid
before fleeing in a black Audi [driven by his friend, Travon Fuller.
Barone fired two additional shots from the Audi as they drove
away].  Police followed the Audi to a point where [Barone] exited
the vehicle and fled on foot [into the woods].  [Barone] was

tracked and apprehended; shortly thereafter[,] the police recovered a .40 caliber Glock pistol nearby.

*Commonwealth v. Barone*, 232 WDA 2016, at 2-3 (Pa. Super. filed Jun. 21, 2017) (unpublished memorandum decision).

On August 20, 2015, following a three-day jury trial, Barone was convicted of first-degree murder and carrying a firearm without a license. That same day, the trial court sentenced Barone to the mandatory sentence of life imprisonment without the possibility of parole for the murder conviction, plus a concurrent two-to-four-year sentence for the firearms conviction. Barone timely filed a post-sentence motion, which the court denied on January 20, 2016. Thereafter, Barone timely appealed to this Court, challenging to the sufficiency of the evidence for his murder conviction and the weight of the evidence for both convictions. On June 21, 2017, we affirmed Barone's judgment of sentence. *Id.*

On June 18, 2018, Barone filed a counseled PCRA petition in which he alleged trial counsel's ineffectiveness. On July 18, 2018, the PCRA court issued an order pursuant to Pa.R.Crim.P. Rule 907 indicating its intent to dismiss the petition within 20 days, noting that the ineffectiveness claims were insufficiently pled such that Barone failed to establish entitlement to relief under the PCRA. After considering Barone's reply and the Commonwealth's answer to the Rule 907 notice, the PCRA court dismissed the petition on October 2, 2018. Barone timely appealed to this Court.

On October 24, 2019, a panel of this Court affirmed the PCRA court's order denying PCRA relief. *See Commonwealth v. Barone*, 1528 WDA 2018

(Pa. Super. filed Oct. 24, 2019) (unpublished memorandum decision).  Barone subsequently filed an application for reargument en banc.  On January 3, 2020, we issued a *per curiam* order granting reargument and withdrawing the panel's October 24, 2019 decision.  On January 21, 2020, Barone filed a substituted brief, raising the following issue for our review:

> Whether the trial court erred in dismissing [Barone]'s PCRA petition without a hearing based on ineffective assistance of counsel where counsel failed to request a jury instruction on imperfect self-defense which, if given by the court, could have supported a verdict of voluntary manslaughter?

Brief of Appellant, at 1.

It is well-settled that there is no absolute right to an evidentiary hearing on a PCRA petition.  **Commonwealth v. Jordan**, 772 A.2d 1101, 1014 (Pa. Super. 2001).  The PCRA court may decline to hold an evidentiary hearing on the petition if it determines that there are no genuine issues of material fact, that the defendant is not entitled to PCRA relief, and that no purpose would be served by any further proceedings.  **See** Pa.R.Crim.P. 907(1).  Our review of an order denying PCRA relief is to determine whether the PCRA court's findings, viewed in a light most favorable to the Commonwealth as verdict winner, are supported by the record and free from legal error.  **Commonwealth v. Maddrey**, 205 A.2d 323, 327 (Pa. Super. 2019).  We will reverse the PCRA court's decision only upon an abuse of discretion.  **Id.**

Here, Barone's underlying claim implicates the effectiveness of trial counsel.  We are mindful that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that:  (1) the underlying

legal issue has arguable merit; (2) counsel's actions lacked an objective, reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), citing *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984).

Regarding the second element, the PCRA court "does not question whether there were other, more logical courses of action which counsel could have pursued; rather, the court must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). Where matters of strategy and tactics are concerned, a finding that counsel lacked a reasonable basis is only warranted where the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* With regard to prejudice, "we employ the *Strickland* actual prejudice test, which requires a showing of a reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance. A reasonable probability is a probability [] sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Daniels*, 104 A.3d 267, 281 (Pa. 2014) (internal citations, quotation marks, and brackets omitted). Failure to prove any prong of this test will defeat an ineffectiveness claim. *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014).

Barone argues that trial counsel was ineffective for failing to request a jury instruction on voluntary manslaughter based on imperfect self-defense. Brief of Appellant, at 4. He submits that if counsel had requested this

instruction, the jury "could have found [Barone] guilty of voluntary manslaughter based on [his] unreasonable belief that [he] needed to use [deadly] force." *Id.* at 7-8 (citing, *inter alia*, **Commonwealth v. Carter**, 466 A.2d 1328, 1332 (Pa. 1983) ("a trial court shall charge on ["unreasonable belief"] voluntary manslaughter only when requested, where that sub-class of the offense of voluntary manslaughter has been made an issue in the case[,] and the trial evidence could reasonably support a verdict on it.")).

Generally, an intentional killing constitutes murder of the first degree. 18 Pa.C.S.A. § 2502 (Murder). However, pursuant to 18 Pa.C.S.A. § 2503(b), voluntary manslaughter is "an intentional killing . . . committed as a result of an unreasonable belief in the need for deadly force in self-defense." **Commonwealth v. Washington**, 692 A.2d 1024, 1029 (Pa. 1997); 18 Pa.C.S.A. § 2503(b). The defense of "imperfect self-defense," which reduces the crime of murder to voluntary manslaughter, exists where the defendant actually but unreasonably believed that deadly force was necessary to protect himself or another against the use of unlawful force. **Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012). In order to establish this defense, "**all other principles of self-defense must still be met**[.]" *Id.* (emphasis added). "When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." **Commonwealth v. Ventura**, 975 A.2d 1128, 1143 (Pa. Super. 2009) (citation omitted). The Commonwealth sustains its burden of disproving a claim of self-defense beyond a reasonable doubt if it proves that:

- 5 -

(1) the defendant was not free from fault in provoking **or continuing** the difficulty which resulted in the killing; (2) the defendant did not reasonably believe that he or another were in imminent danger of death or great bodily harm and that it was necessary to kill in order to prevent such harm; or (3) the defendant could have retreated safely without the use of deadly force.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012) (emphasis added); *Commonwealth v. Tilley*, 595 A.2d 575, 582 (Pa. 1991).

At Barone's trial, Barone testified that on the night in question, Travon Fuller drove Barone and J.J. to a gentlemen's club known as "Club Pink" in order to "have a good time." N.T. Jury Trial, 8/19/15, at 97-100. Fuller parked his Audi behind a pizza shop that was near the club. *Id.* Later in the evening, Barone was speaking to a female acquaintance outside of Club Pink when Fuller grabbed him and started running towards the car. Barone testified that as he ran to Fuller's Audi, he saw two unknown men outside of the club retrieving guns from under the hood of their car. *Id.* at 102-03. He explained that **he would not leave without J.J.**, and that "[w]hen we got to the [Audi,] I grabbed my coat, thr[e]w [it] on[,] and [then Fuller] hit the button for his glove box to open, and there were other guns right there. I grabbed a gun." *Id.* at 103. Thereafter, Barone and Fuller walked back towards Club Pink to find J.J., who, at this point, **was walking in their direction**. *Id.* at 105. When J.J. reached Barone and Fuller, Barone physically guided J.J. towards the Audi and proceeded to walk backwards towards the Audi while facing the direction of Club Pink. *Id.* at 106.

- 6 -

Barone testified that **once J.J. was between himself and the Audi**, he heard the sound of gunshots being fired and decided to "start firing back[;] I'm not gonna [sic] let one of us get killed so it's gonna [sic] be what it's gonna [sic] be." *Id.* at 107. Barone—who, at this point, was with his friends near the vehicle they arrived in—then took multiple steps **towards** Club Pink, jumped on a parking barrier, and fired sixteen gunshots,[1] two of which struck the decedent. *Id.* at 124; N.T. Jury Trial, 8/18/15 at 41-42. **J.J. and Fuller entered the Audi as Barone engaged in the shootout.** N.T. Jury Trial, 8/19/15 at 128. **As the trio drove off, Barone fired two additional shots** in the direction of Club Pink from inside the vehicle. N.T. Jury Trial, 8/18/15 at 60-62. At trial, Barone acknowledged that **at the time he began shooting**, **he could have taken cover** behind a large dumpster or one of multiple vehicles in the parking lot. N.T. Jury Trial, 8/19/15 at 127.

Based on the foregoing, we conclude that the Commonwealth sustained its burden of disproving Barone's defense of imperfect self-defense or defense of others beyond a reasonable doubt. The evidence presented at trial plainly

_____

[1] During Barone's cross-examination, the following exchange occurred:

Q: Sir, you fired the first shot, didn't you?

A: No.

Q: So you would want this jury to believe that you were being fired upon and you[,] in response[,] took multiple steps forward, jumped on that parking barrier[,] and fired at someone that was firing a weapon at you?

A: Yes. Yes, ma'am.

N.T. Jury Trial, 8/19/15, at 125.

established that Barone was not free from fault in **continuing** the difficulty that led to Sumpter's death, ***see Mouzon***, ***supra***, and that Barone chose not to retreat from the parking lot, despite being able to do so safely with his two companions, before using deadly force against the unknown men. Thus, the defense of "imperfect self-defense" was not available to him. ***Id***.

Counsel is not required to request a jury instruction that is not supported by the evidence. ***Strickland***, ***supra***. Here, Barone's trial counsel cannot be deemed ineffective for failing to request a jury instruction on imperfect self-defense where the trial evidence could not reasonably support that verdict. ***See Mouzon***, ***supra***; ***Carter***, ***supra***; ***see also Commonwealth v. Phillips***, 946 A.2d 103, 110 (Pa. Super. 2008) (instructions regarding matters not supported by evidence serve no purpose other than to confuse jury). Thus, Barone has failed to satisfy the first and second prongs of his ineffectiveness claim. ***Koehler***, ***supra***; ***Commonwealth v. Williams***, 640 A.2d 1251, 1265 (Pa. 1994) (counsel cannot be found ineffective for failing to request voluntary manslaughter instruction where record does not support that verdict).

Moreover, Barone cannot establish actual prejudice as a result of counsel's acts or omission. More specifically, he has failed to demonstrate a reasonable probability that the outcome of his trial would have been different had counsel requested the unreasonable belief voluntary manslaughter instruction. The trial court properly and comprehensively instructed the jury on justification, self-defense, and defense of others in this case and, contrary to Barone's claims, provided the jury a basis to conclude that Barone was not

guilty of murder. Indeed, the trial court instructed the jury, in relevant part, as follows:

> The defendant is charged with taking the life of John Sumpter, IV, by criminal homicide. There are three possible verdicts that you might reach in this case; not guilty or guilty of one of the following crimes: [m]urder in the first degree or murder in the third degree. Before I define each of these crimes[,] I will tell you about malice which is an element of the crime of murder.
>
> A person who kills must act with malice to be guilty of any degree of murder, and the word malice as I am using it has a special legal meaning. . . . The type of malice differs for each degree of murder. Thus, for murder of the first degree[,] a killing is with malice if the perpetrator acts with [] an intent to kill or . . . the killing is willful, deliberate[,] and premeditated.
>
> For[-]third degree murder[,] a killing is with malice if the perpetrator's actions show his wanton and willful disregard [for an] unjustifiable and extremely high risk that his conduct would result in death or serious bodily injury to another.
>
> **When deciding whether the defendant acted with malice**[,] **you should consider all of the evidence regarding his words and conduct and the attending circumstances that may show his state of mind**. If you believe that the defendant intentionally used a deadly weapon on a vital part of John Sumpter's body[,] you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant acted with malice.
>
> **The defendant has raised the issue of whether he acted in defense of himself or another, when his actions were to protect** [**J.J.**], [**Fuller**], **or himself. Such a defense is called justification** in the law of the Commonwealth of Pennsylvania. **If the defendant's actions were justified**[,] **you cannot find him guilty beyond a reasonable doubt.** The issue having been raised[,] **it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in justifiable defense of himself or another**.
>
> **The first matter you must consider in deciding whether the Commonwealth has met its burden in this regard is what kind of force the defendant used** in this instance. There are

two kinds, deadly and non-deadly. The Commonwealth claims here that deadly force was used by the defendant and it must prove that claim beyond a reasonable doubt. Deadly force is force that[,] under the circumstances in which it is used[,] is readily capable of causing death or serious bodily injury. Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

* * *

A defendant uses deadly force when he knows that his actions[,] under the circumstances in which he com[m]its them[,] are readily capable of causing death or serious bodily injury.

**If the Commonwealth proves to you beyond a reasonable doubt that the defendant used deadly force, then to prove that such force was not justifiable in this case**[,] **it must prove one of the following elements beyond a reasonable doubt:** . . . **either; one, that the defendant did not actually believe another person was in danger** . . . **or, two, that while the defendant actually believed he needed to use such force**[,] **his belief was unreasonable in light of all the other circumstances known to him.**

**Keep in mind a person is justified in using deadly force against another not only when another person is in actual danger of unlawful attack**[,] **but also when the defendant mistakenly but reasonably believes that he is.**

In the heat of conflict a person who witnesses an attack o[n] another [or himself] ordinarily has neither . . . time nor composure to evaluate carefully the danger and make nice judgments about exactly how much force is needed to protect them. **Consider the realities of the situation faced by the defendant here when you assess whether the Commonwealth has proved beyond a reasonable doubt either that he did not believe that he or another was actually in danger** of death or serious bodily injury to justify his use of such force in their defense **or that while he did believe that**[,] **his belief was unreasonable.**

**The second application of justification in this case is where the defendant knew that he could avoid the necessity of using deadly force with complete safety** by retreating himself [or] trying to cause the person he sought to protect to retreat **and**

**fail**[**ed**] **to do so**. However, neither the defendant nor the person he seeks to protect is obligated to retreat from his own dwelling[.]

N.T. Jury Trial, 8/19/15, at 177-84 (emphasis added).

Additionally, at closing argument, Barone's counsel urged the jury to:

Hold the Commonwealth to the highest standard that we have, proof beyond a reasonable doubt[,] and specifically hold them to the standard of disproving beyond a reasonable doubt self-defense and defense of others. That tape, that shows you[—]Paul Barone told you that he wasn't leaving J.J. He wasn't leaving his brother.

*Id.* at 150.

For the jury to have found Barone guilty of voluntary manslaughter, it would have had to conclude that Barone acted without malice. By convicting him of first-degree murder, however, the jury, which was properly instructed on the law, clearly determined that Barone acted with malice in an unjustified manner in using deadly force against John Sumpter. Barone has given us no reason to believe that the jurors would have returned a different verdict had they been given additional instructions, especially when they had already been told that Barone could not be found guilty of murder if he justifiably acted in self-defense or defense of others. Indeed,

[Barone] testified that he . . . perceived a threat from people he did not know[,] . . . ran to [Fuller]'s Audi, took the time to put on his sweatshirt, grabbed a gun . . ., [] ran back toward [Club Pink] to convince J.J. to leave[, and then, when] J.J. was between him and the Audi, . . . fired at the unknown men. [Barone] then returned to the Audi and fired more shots out of the back seat of the car as they left the scene.

From this testimony alone, the jury was able to conclude reasonably that [Barone] fired his gun with the intent to kill. *See, e.g.*, *Commonwealth v. Smith*, 861 A.2d 892, 895 (Pa. 2004)

- 11 -

("[Smith] and his accomplices then retreated to their automobiles; as they did, [Smith], along with his co-conspirators, fired multiple shots into the crowd of people gathered outside the club. One of these bullets struck [the victim] in the head, killing him. This evidence is clearly sufficient to sustain the first[-]degree murder conviction."); ***Commonwealth v. Gibson***, 688 A.2d 1152, 1158 (Pa. 1997) (affirming first-degree murder conviction based upon multiple shots fired into a crowd in a bar).

***Commonwealth v. Barone***, 232 WDA 2016, at 4-5 (Pa. Super. filed Jun. 21, 2017) (unpublished memorandum decision) (emphasis added).

Based on the foregoing, we discern no abuse of discretion in the PCRA court's decision to decline an evidentiary hearing on Barone's PCRA petition where Barone failed to establish a genuine issue of material fact or that he was entitled to relief under the PCRA. ***See*** Pa.R.Crim.P. 907(1); ***see also Maddrey***, ***supra***.

Order affirmed.

President Judge Panella, President Judge Emeritus Bender, Judge Olson, Judge Stabile, Judge Nichols, Judge McLaughlin and Judge King join this Memorandum.

Judge Bowes files a Dissenting Memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/15/2021

- 12 -