**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1411-19

ULISSA POKHAN,

     Plaintiff-Appellant,

and

RONALD POKHAN,

     Plaintiff,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

     Defendant-Respondent.
_____

Submitted October 25, 2021 – Decided September 19, 2022

Before Judges Messano and Accurso.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0116-16.

Frank J. Nostrame, attorney for appellant.

Messineo Law, LLC, attorneys for respondent (Tariq J. Messineo, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

This is the second time we have considered an appeal relating to State Farm's cancellation of Ulissa Pokhan's homeowner's insurance policy following a fire loss. In an opinion issued in 2019, we reversed the involuntary dismissal of Pokhan's complaint for breach of the policy at the end of her case at trial pursuant to Rule 4:37-2. Pokhan v. State Farm Fire & Cas. Co., A-3336-17 (App. Div. July 30, 2019). We concluded the trial judge erred in finding the evidence adduced in plaintiff's case was sufficient to establish State Farm's affirmative defense that Pokhan's misrepresentations during its post-loss investigation barred her recovery under the policy. Id. at 9-11.

Specifically, we recapped Pokhan's testimony at trial that her father had given her the house in Newark in 2012, when she graduated from college, and that she'd made two claims on a prior homeowner's policy with another insurance company — one in 2012 when Hurricane Sandy ripped shingles from the roof and the second in 2013, when a burst pipe caused extensive water damage. Id. at 2-3. According to Pokhan's trial testimony, her former carrier paid $5,000 or $6,000 on the first claim and $90,000 on the second. Id. at 3.

2

Because her premium was scheduled to increase after those losses, Pokhan looked for another insurance company. Ibid. She testified she applied to State Farm over the telephone, and it issued her a policy in 2013, which she renewed in 2014. Ibid. The fire happened in January 2015. Ibid. In a recorded statement to State Farm the following month, Pokhan acknowledged a prior "frozen pipe" but denied the house sustained any damage, telling the investigator she didn't "believe any payments were made." Id. at 4. She also failed to mention the roof damage from 2012. Ibid. Pokhan admitted on cross-examination she'd given the investigator incorrect information about the flood loss, explaining she'd done so because she "didn't feel" the investigator, whom Pokhan claimed wasn't "telling [her] what's going on," "needed to know that." Ibid. There was no dispute that Pokhan corrected her misstatements about the prior flood loss claim in an examination under oath several weeks later. Ibid.

Although neither Pokhan's State Farm insurance application nor a transcript of either recorded statement was in evidence, and acknowledging that Pokhan denied having provided State Farm with the inaccurate statements State Farm claimed in the application, the trial judge granted State Farm's Rule 4:37-2(b) motion for involuntary dismissal at the close of her case. Id. at 6-8,

A-1411-19

10.  The judge found the investigator was "entitled to see if there were material misrepresentations on the application.  That's why these questions about the prior loss — particularly, the pipe that broke in February 2013" — were "a legitimate part of her investigation."  Id. at 7.  Relying on Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 533 (1990), the judge reasoned that Pokhan's reasons for not being forthcoming with the investigator in her first recorded statement didn't matter:  "[h]er excuse for lying is not relevant.  She knew [the investigator] was from State Farm.  She knew she was investigating this claim.  And she clearly tried to mislead her as to something that seemed to justify what looked like misstatements in the application."  Pokhan, slip op. at 7-8.

We reversed, finding State Farm had not carried its burden on its affirmative defense, which required it "to prove Pokhan 'willfully misrepresented material facts after a loss'" under Longobardi.  Id. at 9 (quoting Longobardi, 121 N.J. at 540).  Although satisfied Pokhan's statements to the investigator qualified as willful misstatements, we found there was nothing in the trial record to permit a factfinder to assess whether the misstatements were material under Longobardi, that is "if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important

4

in determining its course of action." Id. at 9-10 (quoting Longobardi, 121 N.J. at 542).

We explained that "[w]ithout the original insurance application or testimony from anyone at State Farm as to the nature of the investigation," the trial court could only speculate about the importance of Pokhan's statements to State Farm's investigation and thus "erred when it involuntarily dismissed Pokhan's suit based on her willful misrepresentation of material facts following her fire loss." Id. at 10-11. Although we "express[ed] no opinion on the merits of such a claim, or whether the evidence admitted at a retrial will be sufficient to permit Pokhan to survive a motion for judgment at the conclusion of all the evidence," we concluded "a fact-finder could also consider whether Pokhan corrected her misstatements promptly in her examination under oath in considering their materiality" under Mariani v. Bender, 85 N.J. Super. 490, 501 (App. Div. 1964) (holding "[e]ven though an insured may have given his insurance carrier an untrue statement of the accident, no breach of the cooperation clause results if the untrue statement is promptly and seasonably corrected"). Pokhan, slip op. at 11.

The case was not retried as we anticipated. Instead, State Farm sought summary judgment shortly before the rescheduled trial date based on

misstatements Pokhan allegedly made in her application for insurance as well as the misstatements we considered in the prior appeal made during State Farm's post-loss investigation.

Specifically, State Farm claimed Pokhan, in her application for insurance, misrepresented that there was no prior insurer of her home, she did not have any losses at the property during the prior five years, there was no damage to the dwelling that had not been repaired at the time of her application, she never had another insurer or agency cancel or refuse to renew similar insurance, and that her home was constructed in 1990. In support of those allegations, State Farm submitted Pokhan's State Farm application, documents issued by her prior insurer, including payment of prior claims, a detailed property inspection report with photographs and a notice of cancellation of her prior policy based on the poor physical condition of her home, as well as the affidavits of three individuals — two State Farm employees, an investigator and an underwriter, and the head of the State Farm agency through which Pokhan made application for insurance.

The investigator swore Pokhan completed the application on March 21, 2013, which was "secured over the phone" in a conversation between Pokhan "and Kelly Smith, an employee of State Farm Agent Michael Laglia's office."

6

The investigator also swore, however, that Smith is no longer employed by Laglia, and State Farm had "been unable to secure Ms. Smith's current contact information." Laglia swore individuals in his office "routinely complete State Farm policy application[s] over the telephone," explaining the "regular practice" of representatives in his office who field such applications is to ask "standard policy application questions" that "are required for all State Farm policy applications."

Laglia claimed it was his office's "regular practice" to contemporaneously record the applicant's responses to the questions in "the application system." He also swore answers to the questions on the application "come from the applicant" and "[u]nder no circumstance does a representative from [his] office provide any answers to the application questions on behalf of the applicant." He swore Pokhan completed the policy application over the telephone with his office on March 21, 2013, that because such applications are completed electronically, they are not signed by the applicant, and Pokhan's attached application was "a true and accurate business record created and maintained in the ordinary course of business."

The underwriter averred he was responsible for setting premiums on homeowners' policies State Farm issued in New Jersey. He certified "State

7

Farm will not issue a policy for insurance if the dwelling [is] not in good condition, under construction or in disrepair."  Asserting he had "personal knowledge of the facts set forth in this affidavit," the underwriter averred Pokhan completed a policy application on March 21, 2013, in which she "represented to State Farm, during policy procurement, that she did not have a most recent insurer."

The underwriter also swore Pokhan "represented to State Farm, during policy procurement, that no insurer or agency canceled or refused to issue or renew similar insurance to her or any household member within the past 3 years," that "she did not experience any prior losses, insured or not, in the past 5 years," that "there was no damage to the dwelling that has not been repaired," that "the dwelling was built in 1990," and that "there were no missing or loose shingles at the time of the policy application."  He swore the policy would not have been issued had State Farm known Pokhan's home was not in good repair, and that the policy premium would have been "significantly greater" had "the insured disclosed the presence of prior losses," or "the accurate year the dwelling was built," or that she "had a prior similar policy canceled and/or non-renewed."

8

Pokhan opposed the motion, averring she spoke to a woman named Nicole when applying for insurance from State Farm; that she never spoke to anyone named "Kelly Smith," as the investigator claimed in her affidavit; and that "Nicole" asked her several questions over the course of their ten-minute conversation, which Pokhan answered truthfully. Pokhan certified she was never provided a copy of the application completed for her by State Farm's agent until after the fire loss. She claimed the application "contains much information" she "could not possibly have given because [she] had no knowledge of it," including the rating of the electrical box in amps; the number of circuit breakers; whether the property was within 2500 feet of water at high tide; the "territory zone" and "sub zone"; that the heating system was updated in 2005, when she would have been fifteen-years-old; that the "electrical year" was "original"; what year the property was built; that the roof had been replaced and there were no loose shingles.

Pokhan argued she has "continually denied providing information contained on the 'application'" and that State Farm has never produced the person it alleges took the information from her. She also pointed out that none of the affiants State Farm relied on had any personal knowledge as to whether she provided the information in the application, notwithstanding their

9

averments to the contrary. While allowing "[t]he application might be a State Farm business record," Pokhan claimed "the issue is who provided the information contained in it." She noted the affiants' statements that the application was completed on March 21, 2013, the day of her telephone conversation with a State Farm agent, are contradicted by the document itself, which states the premises were inspected on April 24, 2013, the day the policy issued, by Michael Laglia, who failed to mention it in his affidavit. Pokhan argued there was no basis for State Farm's claim that it would not have issued the policy had it known the property was in disrepair, given its agent Laglia inspected the premises before State Farm issued the policy.

Pokhan also did not admit the authenticity of the documents allegedly procured from her former insurer, which were simply attached to State Farm's counsel's certification.[1] She claimed there was no indication she was ever provided a copy of the supposed notice of cancellation of her prior policy,

---

[1] State Farm's attempt to correct that problem on appeal by including its subpoena duces tecum to Pokhan's prior insurer and correspondence from its counsel, which were not supplied to the trial court, is patently improper. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:5-4(a) (2023) (noting "[i]t is, of course, clear that in their review the appellate courts will not ordinarily consider evidentiary material which is not in the record below").

which was not addressed to her or to anyone, and which stated the policy was reinstated on the same day it was supposedly cancelled.

After hearing argument, the motion judge, who was not the judge who presided over the trial, issued a written opinion granting State Farm's motion to rescind the policy. The judge found there were no genuine issues of material fact, and that State Farm had provided the "court with the missing or incomplete information," that is the insurance application and the investigator's complete deposition testimony, which we held denied the trial judge the ability to assess the materiality of Pokhan's post-loss misstatements to State Farm.[2] Without addressing the admissibility of any of the disputed documents submitted on the motion, see Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010) (instructing "a trial court confronted with an evidence determination precedent to ruling on a summary judgment motion squarely must address the evidence decision first"), the judge relied on Pokhan's application to find she provided untruthful answers to the questions

---

[2] The statement of items submitted on the summary judgment motion does not include a reference to the investigator's deposition transcript, and she did not address in her affidavit how Pokhan's post-loss misstatements "were relevant to State Farm's concerns or important in determining its course of action." Pokhan, slip op. at 10. The investigator's deposition transcript is not in the record on appeal.

of whether any insurer or agency had cancelled or refused to issue or renew similar insurance to her within the past three years, whether she had any losses in the past five years, and whether there was any damage to the dwelling that has not been repaired. The judge also found Pokhan misstated the property was built in 1990, "though the year provided to Omega Insurance [her prior insurer] by plaintiff and listed on the prior Omega Insurance inspection report is 1949."

The judge found the underwriter explained "why the information sought on State Farm's application for insurance is material" and that "State Farm would not require the information sought on all of its policies if it was not essential to its determinations of whether to insure or how much to charge in premiums to cover its risk of loss." The judge also relied on Laglia's affidavit averring that the questions posed to Pokhan "during her telephone application process" were the same ones posed to all applicants and "that State Farm employees do not input answers to policy application questions that are not provided by the applicant."

The judge dismissed Pokhan's certification that she did not supply the misstatements on the application as "self-serving," finding her averments "carry little weight in light of her other misstatements to State Farm." The

12

judge further found Pokhan's "denial does not negate the misstatements she made after the fire loss about her prior losses and payouts, the dwelling's state of repair when the fire loss occurred, and about losing her prior insurance coverage." The judge found those "deceptions are material because they concern characteristics of the dwelling which are important to State Farm's determination of risk in providing coverage and establishing premiums, and are germane to State Farm's evaluation [of] the damage resulting from the fire loss." The judge found "more simply, they violate State Farm's concealment clause."

Finally, the judge found Pokhan's misstatements were not seasonably corrected because the examination under oath did not occur until two years after her application for insurance and four months after the fire, "three times as long . . . as it did for the defendant in Mariani" to correct his misstatements. The judge found Pokhan's "misstatements handicapped State Farm's investigation into the extent of the fire damage and merit of the insurance policy."

Pokhan appeals, arguing the summary judgment for State Farm must be reversed because the motion judge improperly found facts and weighed

13

evidence in determining Pokhan provided the misinformation contained in the application and did not timely correct her post-loss statements. We agree.

It is axiomatic that summary judgment is only appropriate where there is no genuine issue of material fact challenged, and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). The test is "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"A court deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

We, of course, review the grant of summary judgment using the same standard as the motion judge. Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022). Applying that standard, mindful of State Farm's burden to prove its affirmative defense of fraud voiding the policy, Liberty Mut. Ins. Co.

14

v. Land, 186 N.J. 163, 177-78 (2006), convinces us the evidence, when viewed most favorably to Pokhan as required on the motion, is insufficient to support State Farm's rescission of the policy.

There is obviously a material, factual dispute over whether Pokhan provided all of the information, including the information State Farm claims is false, on the insurance application, precluding summary judgment on State Farm's claim of fraud in Pokhan's procurement of the policy. The application is not signed, and there is no dispute that State Farm never provided Pokhan — prior to the fire loss — a copy to permit her to confirm or deny the information recorded on the form by an individual State Farm has never produced and claims it cannot locate. State Farm was denied summary judgment based on this dispute of fact in 2017, before the case was tried. Nothing has changed since that time; the factual dispute remains. None of the three individuals who swore under oath that Pokhan completed the application on March 21, 2013, or provided the information on the application has offered any first-hand knowledge of the telephone conversation between Pokhan and the individual State Farm claims took Pokhan's application, which conversation was apparently not recorded.

A-1411-19

Because the affiants had no personal knowledge of the facts surrounding the taking of Pokhan's application, including whether she provided all of the information recorded on the form, the affidavits did not comply with the requirements of Rule 1:6-6, and the court erred in relying on them to conclude Pokhan made the misstatements State Farm claims. See Jeter v. Stevenson, 284 N.J. Super. 229, 233 (App. Div. 1995) (explaining that even if the disputed statement were to be deemed admissible on the motion, "its assertions are not conclusive. It does no more than raise a factual issue").

The judge's dismissal of Pokhan's certification, which was properly made on personal knowledge in accordance with Rule 1:6-6, as nothing more than "self-serving statements carry[ing] little weight in light of her other misstatements to State Farm," was an obviously impermissible weighing of the evidence on the motion. See Brill, 142 N.J. at 540 (instructing that "[c]redibility determinations" must "be made by a jury and not the judge"). While we express no opinion on whether State Farm will be successful in admitting the application as a business record at trial under N.J.R.E. 803(c)(6) following a N.J.R.E. 104(a) hearing, see State v. Sweet, 195 N.J. 357, 370 (2008) (describing the three conditions a proponent must satisfy in order to admit a document under the business record exception to the hearsay rule), we

are convinced the factual dispute over whether Pokhan supplied the misstatements in the application precludes summary judgment to State Farm on its affirmative defense of fraud in the procurement of the policy.

That dispute also precluded State Farm from obtaining summary judgment on its post-loss claim on this record.  Although State Farm ostensibly contended on the motion that it accepted Pokhan's position that she did not provide the misstatements on the application, it argued the information on the application was relevant "because some of those questions were asked during the recorded statement or during the examination under oath."  State Farm claimed each question put to Pokhan about prior losses during the post-loss investigation "is material because it refers to something that's on the application."  Counsel argued the misstatements are material based on the affidavit of the underwriter who asserted "[t]he policy premium charged to Ulissa Pokhan was set utilizing the information provided by her in her policy application," the policy would not have issued had State Farm been aware the premises "was not in good repair," and the premium would have been higher had she "disclosed the presence of prior losses," the accurate age of the building and that she "had a prior similar policy canceled and/or non-renewed."

17

State Farm's argument and its reliance on the underwriter's affidavit led the judge to conclude Pokhan made the misstatements State Farm claimed in the application, and that the willful misstatements made during the post-loss investigation were material "because they concern characteristics of the dwelling which are important to State Farm's determination of risk in providing coverage and establishing premiums."  That finding — and State Farm's argument based on its underwriter's affidavit — of course, presumes Pokhan was asked the questions in the application process and provided false information.  If instead a jury were to conclude Pokhan was never asked the questions, or if asked, answered truthfully and her answers were mis-recorded, we would be hard pressed to understand how her post-loss misstatements could be material to either the issuance of the policy or the premium.

In other words, State Farm's post-loss fraud argument on the motion was premised entirely on its contention that Pokhan provided false information in her application, which continues to be a disputed issue of fact.  Although the motion judge also found Pokhan's post-loss misstatements were "germane to State Farm's evaluation [of] the damage resulting from the fire loss," and "handicapped [its] investigation into the extent of the fire damage," there is no support for those findings in the record as State Farm never addressed on the

motion how Pokhan's post-loss misstatements affected its post-loss investigation. See Longobardi, 121 N.J. at 542 ("An insured's misstatement is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action.").

State Farm's failure on that front also undermines the motion judge's finding that Pokhan failed to seasonably correct her post-loss misstatements. The motion judge found Pokhan did not seasonably correct her misstatements because she waited two years after the application and four months after the fire loss, which was "three times as long" as it took the plaintiff in Mariani to correct his.

Leaving aside the trial judge's erroneous finding on a disputed factual record that Pokhan made the misstatements in the application that State Farm claims, we do not understand Mariani to depend on a mechanical time computation. The appropriate inquiry is whether the carrier "was handicapped in its investigation." Mariani, 85 N.J. Super. at 500. Although it is clear the carrier need not "show prejudice in establishing a breach of the cooperation clause, absence of prejudice to the carrier may be a factor in determining

whether or not a misstatement was seasonably withdrawn or corrected." Id. at 501.

As State Farm has never addressed, to our knowledge, the effect of Pokhan's post-loss misstatements on its post-loss investigation, summary judgment on the Mariani issue was not warranted. The motion judge's finding that Pokhan breached the cooperation clause in her State Farm policy is similarly unsupported because State Farm failed to establish the materiality of the misstatements, first at trial and now on summary judgment. See Longobardi, 121 N.J. at 533 (holding "when an insurance policy clearly states that material misrepresentations will void the policy, the insurer need not pay the insured for an alleged loss if the insured makes a material misrepresentation to the insurer while it is investigating the claim").

We reverse summary judgment to State Farm and again remand the case for retrial. Because the motion judge made findings on Pokhan's credibility without hearing her testify, further proceedings in the case should occur before another judge. See R.L. v. Voytac, 199 N.J. 285, 306 (2009).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION