**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1566-21

TORY BURCH, LLC,

     Plaintiff-Appellant,

v.

ZURICH AMERICAN
INSURANCE COMPANY,

     Defendant-Respondent.

_____

Submitted November 9, 2023 – Decided December 6, 2023

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0829-21.

Blank Rome LLP, attorneys for appellant (Stephen M. Orlofsky, Michael Ray Darbee, Lisa M. Campisi and Helen K. Michael (Blank Rome LLP) of the District of Columbia and Maryland bars, admitted pro hac vice, on the briefs).

Edward M. Pinter (Ford Marrin Esposito Witmeyer & Gleser, LLP), Jon R. Grabowski (Ford Marrin Esposito Witmeyer & Gleser, LLP), Jeffrey R. Babbin (Wiggin and Dana LLP) of the Connecticut and District of

Columbia bars, admitted pro hac vice, and David R. Roth (Wiggin and Dana LLP) of the Connecticut and New York bars, admitted pro hac vice, attorneys for respondent (Edward M. Pinter, Jon R. Grabowski, Jeffrey R. Babbin and David R. Roth, on the brief).

Flynn Watts, LLC, attorneys for amicus curiae Medical Society of New Jersey (Michael A. Moroney, on the brief).

Kevin Vincent Small (Hunton Andrews Kurth, LLP) attorney for amicus curiae United Policyholders.

PER CURIAM

Plaintiff Tory Burch, LLC, an American women's fashion brand with over 300 stores globally and three located in New Jersey, appeals from a January 6, 2022 order granting defendant Zurich American Insurance Company's motion to dismiss. We affirm.

I.

Plaintiff purchased an all-risk insurance Policy (Policy) from defendant for the Policy period December 31, 2019, to December 31, 2020, and a renewal Policy for the Policy period December 31, 2020, to December 31, 2021. The Policy provisions are the same in both Policies. The Policies insure against "direct physical loss of or damage to" plaintiff's property. However, the Policies only contemplate certain kinds of losses.

The Policies provide for coverage as follows:

A-1566-21

A.  INSURING AGREEMENT

   The Covered Cause of Loss provision states:

   > This Policy Insures against direct physical loss of or
   > damage caused by a **Covered Cause of Loss** to
   > Covered Property, at an Insured Location described in
   > Section II-2.01, all subject to the terms, conditions and
   > exclusions stated in this Policy.
   >
   > No coverage can be provided in violation of any U.S.
   > economic or trade sanctions laws or regulations. Such
   > coverage, which may be in violation of any U.S.
   > economic or trade sanctions laws and regulations, shall
   > be null and void and the Company shall not be liable to
   > make any payments or provide any defense under this
   > policy.

   Each Policy defines "Covered Cause of Loss" as "all risks of direct

physical loss of or damage from any cause unless excluded" and define "Covered

Property" as follows:

   > This Policy insures the following property, unless
   > otherwise excluded elsewhere in this Policy, located at
   > an Insured Location or within 1,000 feet thereof or as
   > otherwise provided for in this Policy.
   >
   > The Insured's interest in buildings (or structures)
   > including new construction, additions, alterations, and
   > repairs that the Insured owns, occupies, leases or rents.
   >
   > The Insured's interest in Personal Property, including
   > Improvements and Betterments.

A-1566-21

Property of Others will not extend any Time Element Coverage provided under this Policy to the owner of the property and is limited to property:

In the Insured's care, custody or control;

In which the Insured has an insurable interest or obligation;

For which the Insured is legally liable; or

For which the Insured has agreed in writing prior to any loss or damage to provide coverage.

Personal Property of officers and employees of the Insured.

B. <u>EXCLUSIONS</u>

The Policies exclude several types of risk from coverage due to contamination, stating:

This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

**Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

Changes in size, color, flavor, texture or finish.

4

Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property.

This Policy excludes:

Loss or damage arising from delay, loss of market, or loss of use.

Indirect or remote loss or damage

Contamination (Contaminated) is defined as "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew." Contaminant(s) is defined as "[a]ny solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**."

C. TIME ELEMENT COVERAGE

The Time Element provisions state in pertinent part:

5

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.

These Time Element coverages are subject to exclusions—like the Contamination Exclusion—and are limited to a "Period of Liability," which is the period of time necessary to "repair" or "replace" lost or damaged property and resume operations. The provision states:

> For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage. The expiration of this Policy will not limit the Period of Liability.

In March 2020, in response to the COVID-19 pandemic, Governor Phil Murphy declared a state of emergency and issued Executive Orders (EOs), which suspended non-essential business operations, including retail stores. See EO No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020); EO No. 107 (Mar.

6

21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020) (hereinafter collectively referred to as the "EOs").

As a result, plaintiff was forced to close its businesses to the public from March to May 2020. Plaintiff alleged it suffered a substantial loss of business and income when the EOs were in effect. Plaintiff sought coverage through its insurance Policies with defendant. However, defendant declined coverage because it alleged the Policies did not cover the COVID-19 related losses. In addition, defendant alleged coverage was barred by the Policies' Contamination Exclusion.

In response, plaintiff brought suit for a declaratory judgment and to compel defendant to provide insurance coverage to plaintiff (1) for property damage and business interruption due to the COVID-19 virus and pandemic; and (2) for breach of contract.

Defendant moved to dismiss the complaint under Rule 4:6-2(e), arguing the plain language of the Policies did not cover the losses at issue. Following argument, the trial court granted the motion and dismissed plaintiff's amended declaratory complaint[1] with prejudice, finding there was no direct physical loss

---

[1] The record does not contain the original declaratory judgment complaint and no explanation is given for the amended pleading being filed.

A-1566-21

of or damage to plaintiff's property, and the Contamination Exclusion applied because the Governor issued the EOs in response to the COVID-19 virus. The trial court found the Contamination Exclusion "was clear and unambiguous and excluded coverage for [c]ontamination and any cost due to [c]ontamination including the ability to use or occupy property or any cost of making property safe or suitable for use or occupancy."

On appeal, plaintiff argues the usage limitations imposed by the EOs constituted physical loss or damage to its properties, and that the Policies provide for such coverage under the Covered Cause of Loss provision. Plaintiff avers the trial court erred by improperly discounting its allegations that COVID-19 caused physical alterations to its insured premises. Plaintiff contends the Contamination Exclusion does not bar coverage because the EOs, not the virus itself, caused the closures. Plaintiff also argues that even if the Contamination Exclusion did apply, the doctrine of regulatory estoppel bars defendant from asserting it. We granted leave to the Medical Society of New Jersey to file an amicus curiae brief, which supports plaintiff's contentions and to the United Policy Holders to file an amicus curiae brief, which supports defendant's contentions.

A-1566-21

II.

Our review of a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted is de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). We "must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). To determine the adequacy of a pleading, we must determine "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

When "interpreting insurance contracts, we first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). The policy must "be enforced as written when its terms are clear" so the "expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010).

If an insurance policy is ambiguous, courts will construe the terms in favor of the insured. Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective

Fire & Cas. Ins. Co., 473 N.J. Super. 1, 18 (App. Div. 2022) (quoting Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 208 (2017)). This doctrine only applies if there is a genuine ambiguity in the contract, and "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274 (2001)).

III.

Plaintiff argues it suffered a covered loss or damage because of the EOs mandating business closures during the COVID-19 pandemic. Plaintiff first asserts the trial court erred in granting the motion to dismiss. Plaintiff argues the verbiage "physical loss of or damage to" found in the Policies provides coverage for either "physical loss" or "damage," and the trial court erred when it determined "direct physical loss or damage" required "physical alteration" of plaintiff's properties.

Plaintiff contends the provision must be construed to provide coverage for either a (1) material loss of use or diminution in the use of the insured's properties for its insured purpose, or (2) material harm to such property. Plaintiff contends the actual and threatened presence of the coronavirus caused

physical loss of or damage to its property requiring it to "implement costly protective measures" and restricted or completely suspended its operations.

Plaintiff's arguments are virtually identical to those of the claimants in Mac Property. In Mac Property, several businesses sought insurance coverage for lost business based on policies, which contained the language "direct physical loss of or damage to covered property" after the COVID-19 EOs required non-essential businesses to close. 473 N.J. Super. at 12-16. We rejected their theory, holding the term "direct physical loss of or damage to" covered property was "not so confusing that average policyholders . . . could not understand that coverage extended only to instances where the insured property has suffered a detrimental physical alteration . . . or there was a physical loss of the insured property." Id. at 21-22.

While New Jersey has "adopted a broad notion of the term 'physical[,]'" when the word is paired with another term, the resulting phrase means "'detrimental alteration[],' or 'damage or harm to the physical condition of a thing.'" Id. at 20 (second alteration in original) (quoting Phibro Animal Health Corp. v. Nat'l Union of Fire Ins. Co., 446 N.J. Super. 419, 437-38 (App. Div. 2016)). In Mac Property, we found it significant there was no damage to any of the equipment or property of the businesses. Id. at 23. In addition, we rejected

11

the notion that use of the words "loss" and "damage" required a distinction. Id. at 26. We also found the distinction argued by the claimants in that case to be "irrelevant . . . because the contention 'ignore[d]' the fact that the relevant coverage provisions provided that 'the loss itself must be a "direct physical" loss, clearly requiring a direct, physical deprivation of possession.'" Id. at 26 (alteration in original) (citing Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1277 (Mass. 2022)).

Here, the disputed Policies state the period of liability "starts from the time of physical loss or damage" and "end[s] when, with due diligence and dispatch, the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage."

The above language is similar to the policy language in Mac Property. Plaintiff's Policies clearly and unambiguously require that suspension of a claimant's business be "caused by direct physical loss of or damage to [the] property." Applying the holding in Mac Property, it follows that the Policies should be applied as they are written. We interpret the Policies' requirement of physical loss of or damage to property to require "a direct, physical deprivation of possession" of the property. Mac Property, 473 N.J. Super. at 26. The EOs

A-1566-21

barred plaintiff from operating its property for its intended purpose at full capacity but did not physically deprive plaintiff from possessing it.

We note plaintiff cites Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226 (3d Cir. 2002), for the proposition that "New Jersey courts have interpreted the physical loss or damage requirement broadly, holding that the loss of use, loss of access, loss of value, or uninhabitability of property constitutes physical loss or damage." Port Authority substantially predates our decision in Mac Property, and in any event is not controlling.[2]

We next address the Contamination Exclusion in the Policies. Exclusionary provisions in insurance contracts "are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997) (quoting Doto v. Russo, 140 N.J. 554, 559 (1995)). "Where the words of an exclusionary clause

---

[2]  In Port Authority, the Third Circuit held that an insured which owned a building with "asbestos . . . present in the components of a structure, but . . . not in such form or quantity as to make the [structure] unusable" had not suffered a "loss" under the insured's all risk policy. Port Authority, 311 F.3d. at 236.  Only the actual release of the asbestos fibers or the "imminent threat" of such a release could qualify as a "loss" under the all-risk policy.  Ibid.  The Third Circuit recently affirmed this principle in Wilson v. USI Ins. Serv. LLC, 57 F.4th 13, 138 (3d Cir. 2023).  We find in the record no imminent threat of a "release" which would eliminate or destroy the functionality of plaintiff's property or render it useless or uninhabitable.  Id. at 142.

are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" Aviation Charters v. Avemco Ins. Co., 335 N.J. Super. 591, 594 (App. Div. 2000) (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990)). "Where there are several interpretations of an exclusion's meaning" a court "would tend to favor the one for coverage," however, this does not mean "that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." Aviation Charters, 335 N.J. Super. at 594 (citations omitted).

Plaintiff contends the Contamination Exclusion in the Policies does not apply because the proximate cause of plaintiff's loss was not COVID-19, but the EOs. We addressed the same proximate cause argument in Mac Property and held the EOs "were only issued to curb the COVID-19 pandemic, making the virus the efficient proximate cause of plaintiffs' losses." Mac Property, 473 N.J. Super. at 40. We concluded "the [EOs] were inextricably intertwined with COVID-19" and "[b]ecause plaintiffs' business losses thus were 'caused by or resulted from' [the] COVID-19 virus, their policies' endorsements bar coverage." Ibid. The facts here are virtually identical and we find no reason to deviate from the sound reasoning espoused in Mac Property.

We also reject plaintiff's argument that it is entitled to discovery and to serve expert reports to show the coronavirus physically altered its property. Defendant counters plaintiff never alleged that coronavirus was on its property, and plaintiff conceded it could not prove the coronavirus was present at its commercial premises.

In Mac Property, we asserted that "the mere presence of the virus on surfaces [does] not physically alter the property, nor [does] the existence of airborne particles carrying the virus." Mac Property, 473 N.J. Super. at 24 (quoting Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327, 337 (7th Cir. 2021)). Thus, based on our holding in Mac Property, we reject plaintiff's contention that respiratory particles—droplets and airborne aerosols—are physical substances that could have physically and tangibly altered its insured property. Since the Policies here require physical tangible alteration to property, and it has already been determined that coronavirus on surfaces could not physically alter property, factual and expert discovery would be futile.

We also reject plaintiff's argument that the Policies cover the mere "risk of" physical loss or damage regardless of whether the coronavirus was actually present or caused harm to its store locations. As stated, the Policies provide coverage for "direct physical loss or damage caused by a Covered Cause of Loss

15

to Covered Property, at an Insured Location." In Mac Property, we addressed that argument and concluded that a "Covered Cause of Loss" was defined as a "Risk of Direct Physical Loss." Mac Property, 473 N.J. Super. at 25.

Plaintiff argues its "reasonable expectation" that the Contamination Exclusion should be limited to "traditional environmental hazards" be construed to warrant coverage. However, the Contamination Exclusion is clear and unambiguous, and therefore, it is unnecessary for us to consider plaintiff's subjective interpretation. See Passaic Valley Sewerage Com'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 608 (2011) (stating an insured's reasonable expectations are only considered when the court finds the relevant language ambiguous).

Next, plaintiff argues that a "Virus Deletion Endorsement" removed the words "virus" and "pathogen" from the Policies' definition of "contamination," and the Contamination Exclusion—as amended—does not bar coverage. Plaintiff argues this "modification was not an accident" because it was required by the Louisiana Department of Insurance. Plaintiff argues the "Amendatory Endorsement – Louisiana" supersedes the Contamination Exclusion. We disagree. Had defendant intended for state-titled endorsements using general prefatory language to ignore geographical boundaries, then it would not use

16

geographic identifiers with conflicting terms between endorsements unless the endorsements were meant to be state-specific. See Couch on Insurance § 18.20 ("[T]he policy [and its endorsement] must be considered as a whole and the caption read in connection with the remainder of the contents.") If we adopted plaintiff's interpretation of the Policies, it would render the geographic identifier of all the state-title endorsement meaningless.

Moreover, the Federal District Court of New Jersey, as well as other courts, have addressed the identical language in COVID-19 insurance actions and have held the Louisiana Endorsement amending the Contamination Exclusion is state-specific to Louisiana. See e.g., Manhattan Partners, LLC v. Am. Guar. & Liab. Ins. Co., Civ. No. 20-14342, 2021 U.S. Dist. LEXIS 50461, *4-6 n.3 (D.N.J. Mar. 17, 2021) ("Had the parties intended to remove 'virus' from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state.") We therefore reject plaintiff's argument.

Finally, plaintiff argues the Policies' Contamination Exclusion violated the doctrine of regulatory estoppel, and the trial court should have barred defendant from invoking the Exclusion. Plaintiff contends the insurance industry misrepresented the scope of the Exclusion language as it sought

approval of the Virus Exclusion from regulators by claiming the Exclusion would not result in a reduction of coverage.

Regulatory estoppel applies when "an insurer makes misrepresentations to a regulatory body regarding the meaning and effect of language it has requested to include in its policies . . . ." Id. at 31. If an insured makes misrepresentations regarding the scope of a particular clause, they "may be prevented from enforcing the otherwise clear and plain meaning of that language against an insured." Ibid.

In support of its argument, plaintiff cites a letter addressed to the Missouri Department of Insurance, and a policy form submitted to another regulator in Louisiana, to illustrate the alleged misrepresentations. As the trial court correctly pointed out, "[the doctrine of regulatory estoppel] cannot serve to estop the [E]xclusion based on what [defendant] represented to another sovereign." The record here is devoid of any evidence of a false statement or misrepresentation to a regulatory body regarding the scope of the virus exclusions.

Any arguments raised by plaintiff and the Medical Society of New Jersey and not addressed here lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-1566-21

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

19